#27357, #27358-a-GAS
**2016 S.D. 23**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BLACK HILLS EXCAVATING
SERVICES, INC.,

Plaintiff and Appellant,

v.

RETAIL CONSTRUCTION
SERVICES, INC.,

Defendant, Third-Party
Plaintiff and Appellee,

v.

MITCHELL E. MORRIS,

Third-Party Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JANINE M. KERN
Judge

* * * *

STEVEN T. IVERSON
THOMAS E. BRADY of
Brady Pluimer, P.C.
Spearfish, South Dakota

Attorneys for plaintiff
and appellant.

EDWARD C. CARPENTER
STEPHEN C. HOFFMAN of
Costello, Porter, Hill, Heisterkamp,
  Bushnell & Carpenter, LLP
Rapid City, South Dakota

Attorneys for defendant, third-
party plaintiff and appellee.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 30, 2015
OPINION FILED **03/09/16**

#27357, #27358

SEVERSON, Justice

[¶1.]        Retail Construction Services, Inc. (RCS) and Black Hills Excavating, Inc. (BHE) entered into three subcontract agreements whereby BHE agreed to perform construction services for RCS.  BHE brought this suit and asserted that RCS breached the contracts by ejecting BHE from the projects.  RCS counterclaimed against BHE.  It also filed a complaint against BHE's president Mitch Morris, alleging that he was personally liable for BHE's actions.  After a trial to the court, the circuit court awarded damages for breach of contract to RCS.  It did not impose personal liability on Morris.  BHE appeals a number of issues and RCS has filed a notice of review.  We affirm.

## Background

[¶2.]        RCS hired BHE as a subcontractor for three projects: University Center (University Project), LaCrosse Street Apartments (LaCrosse Project), and Toyota of the Black Hills (Toyota Project).  BHE and RCS executed virtually identical subcontract agreements for the projects.  All three subcontracts were the subject of this lawsuit, but only issues relating to the LaCrosse and Toyota Projects are being appealed.  All of the projects involved excavation work and installation of utilities.  BHE was terminated from the projects and commenced this action, alleging that RCS breached the contracts by wrongfully terminating BHE.  RCS counterclaimed, alleging that BHE breached its agreements by failing to hold the necessary license to perform parts of the work, failing to maintain a schedule, and failing to adequately staff the job.  It also filed a third-party complaint against Morris, the president and sole shareholder of BHE.  It alleged that he was

-1-

personally liable for BHE's actions because he purported to act on behalf of BHE despite knowing that the corporation had been administratively dissolved. We address each of the projects in turn.

*LaCrosse Project*

[¶3.]        RCS and BHE entered into a subcontract for the LaCrosse Project on April 9, 2010. The work BHE was to perform included site grading, storm sewer, sewer and water, and final grading of the base course. By June, BHE was behind the construction schedule. On June 30, 2010, RCS sent its first notice letter to BHE to "serve as [its] warning notice and request to cure breaches for . . . failure to maintain performance schedule[.]" The letter gave BHE until July 5, 2010, to correct deficiencies before RCS proceeded with its remedies. On July 22, 2010, RCS issued a termination letter to BHE. However, instead of terminating BHE, RCS created a remedial schedule and attempted to solve the problems with BHE. When attempts to meet the remedial schedule failed, RCS issued another termination letter to BHE on August 20, 2010. The letter stated that RCS was invoking sections 16 and 17 of the subcontract agreement and that RCS would be replacing BHE. BHE was finally ejected from the project on or about August 23, 2010.

[¶4.]        Ultimately, the circuit court found that BHE breached the LaCrosse Project subcontract by failing to maintain a schedule consistent with project requirements and failing to adequately staff the job. It also found that BHE failed to submit certified payrolls as required and it was not licensed, as required, to perform the water and sewer part of the work. As a result, the court found that

BHE was properly terminated under section 16 of the contract, which provides in full:

> That in case the Subcontractor shall fail to correct, replace and/or re-execute faulty or defective work done and/or materials furnished under this Subcontract, when and if required by the Contractor, or shall fail to complete or diligently proceed with this Subcontract within the time herein provided for, the Contractor upon twenty-four (24) hours notice in writing, via facsimile, or otherwise written means to the Subcontractor shall, have the right to correct, replace and/or re-execute such faulty or defective work, or to take over this Subcontract and complete same either through its own employees or through a contractor or subcontractor of its choice, and to charge the cost thereof to the Subcontractor, together with any liquidated damages caused by a delay in the performance of the Subcontract. Subcontractor shall be responsible for all costs or expenses incurred by Contractor as a result of Subcontractor's failure to perform satisfactorily. In addition, as/if Subcontractor creates delays, the Subcontractor shall be responsible for any/all additional costs attributable to such schedule delays as it impacts other trades; all additional costs for overtime/second or split shift, will be borne by this Subcontractor to get the project back on schedule.

Due to the termination under section 16 and the expenses incurred by RCS to finish the project, the court awarded back charges in the amount of $387.32 to RCS.

*Toyota Project*

[¶5.]        BHE and RCS entered into the Toyota Project contract on June 4, 2010.[1] Under the subcontract, BHE was to perform excavation and utility work similar to the LaCrosse Project. Again, BHE fell behind on the project. RCS issued written notice of defective work to BHE on October 15, 2010. The letter informed BHE that it was failing to maintain a schedule in accordance with the subcontract.

---

1.    The court found that this contract was entered into on May 21 as dated at the top of the contract. However, Morris signed the contract on June 4, 2010.

It gave BHE until October 18 to remedy the problems. RCS issued another written notice of breach to BHE on November 20, 2010. Again, the notice indicated that BHE would have time to cure the breaches enumerated in the letter. It gave BHE until November 22 to cure the breach, after which time RCS would "proceed with remedies as stipulated in the subcontract agreement section 16 for breach[.]"[2] RCS finally terminated the subcontract in January 2011. The circuit court found that this was a proper termination under section 16 of the subcontract. The court awarded RCS $191,208.11 in damages.

[¶6.]      BHE's appeal raises the following issues:

1. Whether the circuit court erred by awarding damages to RCS under section 16 of the subcontracts.
2. Whether the court awarded damages to RCS on the Toyota Project for work outside the scope of the subcontract.
3. Whether the court erred when it determined that RCS was entitled to attorney's fees under the subcontracts.

Through notice of review, RCS asserts that the court erred when it determined that Morris was not responsible for acts purportedly done on behalf of the corporation during a period of time when the corporation was administratively dissolved.

## Standard of Review

[¶7.]      "We review the circuit court's findings of fact under the clearly erroneous standard." *Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 17, 736 N.W.2d 824, 831 (quoting *City of Deadwood v. Summit, Inc.*, 2000 S.D. 29, ¶ 9, 607 N.W.2d 22, 25). "Contract interpretation is a question of law reviewable de novo."

---

2.     Section 16 of the Toyota Project subcontract is identical to section 16 of the LaCrosse Project subcontract. *Supra* ¶ 4.

*Id.* (quoting *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354).

**Analysis**

*Whether the circuit court erred by awarding damages under section 16 of the subcontracts.*

[¶8.]        Section 16 of the subcontracts provides: "Subcontractor shall be responsible for all costs or expenses incurred by Contractor as a result of Subcontractor's failure to perform satisfactorily." BHE contends that the circuit court erred in awarding damages to RCS pursuant to this section because RCS terminated the contract under section 17 rather than section 16. BHE asserts that RCS did not terminate BHE for defective work as allowed under section 16. Although RCS did notify BHE of defective work, BHE submits that because BHE was not terminated within twenty-four hours of the defective work notices, the breaches must have been cured or waived and a new notice of defective work was required from RCS. According to BHE, this waiver or cure of the breaches resulted in BHE's termination under section 17, termination for convenience, rather than for cause under section 16. Thus, BHE maintains damages to RCS are inappropriate because section 17 requires RCS to compensate BHE for BHE's "out-of-pocket costs for labor and material" related to "work performed . . . through the date of termination[.]"

[¶9.]        The circuit court found that BHE breached the subcontracts by failing to proceed with work in an orderly and reasonable manner and by failing to obtain necessary licenses to perform the work. The court found that "BHE was properly terminated for cause under paragraph 16 of the Subcontract Agreement." It also

"specifically reject[ed] BHE's contention that a new notice to cure was required to be issued when the items set forth in the earlier notice were not completed. Morris specifically testified as to receiving a written notice of termination, although the written notice was not introduced at trial." BHE has failed to demonstrate to this Court that the circuit court's findings of fact are clearly erroneous. It has also failed to point us to language in the contract that required BHE to be ejected from the construction premises within twenty-four hours after it received notice of defective work. We affirm the court's determination that RCS terminated the contracts for cause under section 16 due to BHE's breaches; thus, RCS was entitled to damages pursuant to that provision.

*Whether the court awarded damages to RCS on the Toyota Project for work outside the scope of the subcontract.*

[¶10.]      Next, BHE contends that the court erred when it awarded back-charges to RCS on the Toyota Project for items that were outside the scope of BHE's work as enumerated in the subcontract. It alleges that the court erroneously relied on witness testimony to determine the scope of the work under the subcontract. BHE contends that neither the final grading of the base course in preparation for pavement nor the moving and placing of topsoil around the site was within the scope of its work. "When contract language is unambiguous, extrinsic evidence is not considered because the intent of the parties can be derived from within the four corners of the contract." *Vander Heide,* 2007 S.D. 69, ¶ 37, 736 N.W.2d at 835. "However, when the language is ambiguous, we may go beyond the four corners to ascertain the intent of the parties." *Id.,* 736 N.W.2d at 836. "A contract is not rendered ambiguous simply because the parties do not agree on its proper

-6-

construction or their intent upon executing the contract." *Id.* (quoting *Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 10, 618 N.W.2d 725, 727).

[¶11.] In this case, after a review of the integrated agreement, we do not find it ambiguous and need not address witness testimony on the scope of work. BHE submitted a bid proposal that was incorporated into the agreement. The bid proposal specified "Stock Pile Top Soil", "Site Grading + or − .1 ft." and "Final, .1 ft grading, furnish & place separation fabric." The subcontract also incorporated the site specifications, including "Construction Drawing" C1.03R, which is the "Grading Plan." The Grading Plan clearly provided that "[c]ontours shown are finished grade."[3] The Grading Plan also provided that "[a]ll disturbed areas not covered with building or concrete shall be restored per landscaping plan." In light of the bid proposal and subcontract, we need not look outside the four corners of the agreement to determine the parties' intent. BHE's "site grading" and "final . . . grading" was to be done in accordance with the grading plan, which included the work that BHE now maintains is outside its scope. Additionally, we disagree with BHE's contentions that its scope of work "did not include any landscaping work, specifically moving and placing topsoil around the site." The subcontract and Grading Plan clearly provide otherwise. Therefore, we affirm the circuit court's award of damages on the Toyota Project.[4]

---

3. The grading plan provides notes in all caps, we have normalized the capitalization for ease of reading.

4. Because we find no ambiguity in the agreement, we do not address BHE's contentions that the court erred by considering witness testimony on the scope of the work.

[¶12.]    Further, section 16 of the subcontract provides for correcting and replacing defective work. The quantity of work left to complete upon termination of the subcontract and the quantity of defective work that needed to be corrected or replaced are questions of fact. We do not find that the circuit court clearly erred in its factual findings on either the scope of unfinished work covered by the subcontract or the repairs to defective work.

*Whether the court erred when it determined that RCS was entitled to attorney's fees under the subcontracts.*

[¶13.]    "South Dakota follows the American rule for attorney fees in 'that each party bears the burden of the party's own attorney fees.'" *Eagle Ridge Estates Homeowners Ass'n, Inc. v. Anderson*, 2013 S.D. 21, ¶ 28, 827 N.W.2d 859, 867 (quoting *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 29, 707 N.W.2d 85, 98). There are two exceptions to the rule: "first, when a contractual agreement between the parties entitles the prevailing party to attorney fees, and second, when an award of attorney fees is authorized by statute." *Id.* (quoting *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 29, 707 N.W.2d at 98). The circuit court awarded attorney fees to RCS pursuant to section 6 of the subcontract agreements, which provides:

> To save harmless the Contractor and all other subcontractors from any and all losses or damage (including without limiting the generality of the foregoing, legal fees and disbursements) paid or incurred by the Contractor to enforce the provisions of the paragraph occasioned by the failure of the Subcontractor to carry out the provisions of this Subcontract unless such failure results from causes beyond the control of the Subcontractor.

BHE maintains that this is an indemnity clause, as demonstrated by the "hold harmless" language and thus does not allow for recovery between the two contracting parties.[5] We disagree.

[¶14.] BHE relies on our decision in *Icehouse, Inc. v. Geissler*, 2001 S.D. 134, 636 N.W.2d 459. In *Icehouse*, we briefly addressed an indemnity provision in a lease which provided that the lessee agreed to

> indemnify and save [lessor] harmless from all penalties, claims, demands, liabilities, expenses and losses, of whatever nature arising from [lessee's] use of the lease premise. This indemnification shall extend to and include a reasonable attorney fee incurred by [lessor] for any litigation to which the [l]essor is made a party or threatened to be made a party and which arises out of the use and occupation of the lease premises by [lessee].

*Id.* ¶ 29, 636 N.W.2d at 466. We stated that the provision was inapplicable to the instant case because such provisions "are generally recognized to provide indemnity when third parties bring an action against the indemnitee, but not, as here, when the dispute is between the two contracting parties." *Id.*, 636 N.W.2d at 466-67. However, several of the cases we cited with approval in support of this proposition recognize that the clear language of the parties' agreement controls and may indicate an intent to the contrary.[6] This case is distinguishable from *Icehouse*

---

5. "*Indemnify* . . . derives from *indemnis* (= harmless) combined with *facere* (to make). Thus, *indemnify* has long been held to be perfectly synonymous with *hold harmless* and *save harmless*." *A Dictionary of Modern Legal Usage* 436 (2d ed. 1995). *See also Indemnify* (1), Black's Law Dictionary (10th ed. 2014) ("To reimburse (another) for a loss suffered because of a third party's or one's own act or default; hold harmless.").

6. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 21-22 (2d Cir. 1996) ("Intent to provide for counsel fees as damages for breach of

(continued . . .)

-9-

because the contracts contain more than one indemnification clause and the language in section 6 clearly provides for and contemplates litigation between the contracting parties. Section 6 of the subcontracts applies if the Contractor suffers "losses or damage . . . to enforce the provisions . . . occasioned by the failure of the Subcontractor to carry out the provisions of this Subcontract." Such language clearly indicates an intent that the provisions apply if the Subcontractor breaches the subcontract and the Contractor incurs expenses to enforce the Subcontractor's duties.

[¶15.]        Further indication that section 6 contemplates litigation between the contracting parties can be gleaned from section 7 of the contract, which is an indemnification clause that also allows for the recovery of attorney fees, providing:

> Subcontractor agrees to assume entire responsibility and liability . . . for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this Subcontract . . . and agrees to defend, indemnify and save harmless the Contractor . . . from all such claims . . . for which the Contractor may be or may be claimed to be liable and legal fees and disbursements paid or incurred to defend Contractor and enforce the provisions of this paragraph and the Subcontractor further agrees to obtain, maintain and pay for such general liability insurance coverage

_____

(. . . continued)

contract must be 'unmistakably clear' in the language of the contract. . . . The language may be easily read as limited to third party actions . . . . The award of fees cannot, therefore, be supported by the contract's indemnification clause.")(citations omitted); *Hooper Assoc., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989) ("Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.")

> and endorsements as will insure the provisions of the
> paragraph.

As one court noted, "when confronted with indemnification provisions that include both broad indemnity clauses and narrower clauses that specifically target third-party claims, courts have determined that the broad provisions cover claims between the contracting parties, thereby ensuring that neither clause is superfluous." *In re Refco Sec. Litig.*, 890 F. Supp. 2d 332, 342 (S.D.N.Y. 2012) (collecting cases). Such an approach is consistent with our longstanding rule that "[t]he contract is to be read as a whole, making every effort to give effect to all provisions." *Nelson v. Schellpfeffer*, 2003 S.D. 7, ¶ 8, 656 N.W.2d 740, 743. Accordingly, we agree with the circuit court. The language of section 6 is clear; it applies to causes of actions between the contracting parties. In this case, that includes the recovery of attorney fees by RCS because those fees are specifically provided for, and RCS's defense and counterclaims were to "enforce the provisions of the paragraph occasioned by the failure of the Subcontractor to carry out the provisions of [the] Subcontract[s]."

[¶16.] Lastly, BHE maintains that section 6 is ambiguous because of the phrase "enforce the provisions of the paragraph occasioned by the failure of the Subcontractor[,]" which fails to identify a specific paragraph. We agree with the circuit court; this is certainly not a model of clarity, however, it does provide for the payment of legal fees and disbursements. Notwithstanding its awkward arrangement of words, the contract is not "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Vander Heide*, 2007 S.D. 69, ¶ 37, 736 N.W.2d

at 836. It is clear that the contracting parties intended section 6 to apply to actions between them where they have otherwise provided for the possibility of third-party suits. "When the words of a contract are clear and explicit and lead to no absurd consequences, the search for the parties' common intent is at an end." *Nelson*, 2003 S.D. 7, ¶ 8, 656 N.W.2d at 743. Therefore, we affirm the court's grant of attorney fees.

[¶17.]     RCS has moved for appellate attorney fees pursuant to SDCL 15-26A-87.3. "[A]ppellate attorney fees may be granted 'only where such fees are permissible at the trial level.'" *Ellingson v. Ammann*, 2013 S.D. 32, ¶ 12, 830 N.W.2d 99, 102 (quoting *Grynberg Expl. Corp. v. Puckett*, 2004 S.D. 77, ¶ 33, 682 N.W.2d 317, 324). RCS asks for 60% of the fees and tax incurred in this appeal, the same percentage the circuit court awarded. RCS is the prevailing party in this appeal and has complied with the requirements of SDCL 15-26A-87.3. Therefore, we grant RCS's motion for appellate attorney's fees in the amount of $10,696.07 plus tax in the amount of $641.76, for a total amount of $11,337.83.

*Whether Morris is individually liability.*

[¶18.]     Through notice of review, RCS alleges that the circuit court erred because it did not impose individual liability on Morris. BHE was administratively dissolved as of May 14, 2009, prior to entering into the subcontracts with RCS. The circuit court found that Morris, who signed the subcontracts on behalf of BHE, was not aware of the dissolution until December 2010. BHE was not reinstated until August of 2011.

[¶19.]     The circuit court found that Morris had no personal liability because of SDCL 47-1A-1422, which provides in relevant part:

> A corporation administratively dissolved under § 47-1A-1421 may apply to the Office of the Secretary of State for reinstatement any time after the effective date of dissolution. . . .
>
> If the Office of the Secretary of State determines that the application contains the information required by this section and that the information is correct, the Office of the Secretary of State shall cancel the certificate of dissolution and prepare a certificate of reinstatement that recites that determination and the effective date of reinstatement, file the original of the certificate, and serve a copy on the corporation.
>
> When the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred.

RCS asserts that this statute does not allow those acting on behalf of the corporation during a dissolution period to be shielded from liability for acts purportedly done on behalf of the corporation. Instead, RCS asserts that the statute is silent on whether reinstatement retroactively shields corporate officers. Because it is silent, RCS directs us to the common-law rule of agency principles, which it contends is applicable in this case—"a person who makes a contract with a third party purportedly as an agent on behalf of a principal becomes a party to the contract if the purported agent knows or has reason to know that the purported principal does not exist or lacks capacity to be a party to a contract." Restatement (Third) of Agency § 6.04 (2006). For the following reasons, the common-law rule is inapplicable to this case.

[¶20.] Statutory interpretation is a question of law reviewable de novo. *Expungement of Oliver*, 2012 S.D. 9, ¶ 5, 810 N.W.2d 350, 351. We have previously addressed this statute on just one occasion. We stated that it "clearly provides upon reinstatement the corporate existence 'relates back' as if no dissolution had taken

place." *Yankton Ethanol, Inc. v. Vironment, Inc.*, 1999 S.D. 42, ¶ 14, 592 N.W.2d 596, 599. Accordingly, BHE has had a "seamless existence." *See Pannell v. Shannon*, 425 S.W.3d 58, 78 (Ky. 2014) (construing identical provision and holding that "[t]he reinstatement is retroactive to the date of dissolution, and it is as if the dissolution never occurred, giving the company a seamless existence. The limitation on the agent's liability simply for being an agent is likewise seamless."). Because the statute provides that it is "as if no dissolution . . . occurred," and the Secretary of State has "cancel[led] the certificate of dissolution[,]" the corporation has never ceased existing, and Morris is not personally liable for the corporation's acts. SDCL 47-1A-1422; s*ee also Mobridge Cmty. Indus., Inc. v. Toure, Ltd.*, 273 N.W.2d 128, 132 (S.D. 1978) ("The general rule is that the corporation is looked upon as a separate legal entity until there is sufficient reason to the contrary."). The circuit court found no grounds existed for piercing the corporate veil, and BHE has not asserted that the court erred in that determination. Therefore, we affirm.

## Conclusion

[¶21.] The circuit court did not clearly err in determining that BHE had breached the subcontracts. It correctly determined that BHE was properly terminated pursuant to section 16 of the subcontract and awarded damages appropriately. BHE was properly back-charged for work within the scope of the Toyota Project that RCS was required to perform. Lastly, Morris is not personally liable for the corporation's acts because the corporation has had a seamless existence according to SDCL 47-1A-1422.

#27357, #27358

[¶22.]     GILBERTSON, Chief Justice, and ZINTER and WILBUR, Justices, and PARDY, Circuit Court Judge, concur.

[¶23.]     PARDY, Circuit Court Judge, sitting for KERN, Justice, disqualified.