#28626-a-MES
**2019 S.D. 19**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JULIE A. LEIGHTON,                    Plaintiff and Appellant,

    v.

HERBERT C. BENNETT,                    Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DAWN M. ELSHERE
Judge

* * * *

ELLIE M. VANDENBERG                    Attorney for plaintiff
Volga, South Dakota                    and appellant.


WILLIAM C. GARRY
MELISSA R. JELEN of
Cadwell, Sanford, Deibert
  & Garry, LLP                    Attorneys for defendant and
Sioux Falls, South Dakota              appellee.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 7, 2019
OPINION FILED **04/03/19**

#28626

SALTER, Justice

[¶1.] Julie Leighton commenced a personal injury action against Herbert Bennett for injuries she claims to have sustained in a car accident. Bennett died during the pendency of the action, and his defense counsel served notice of his death on Leighton. After Leighton failed to move to substitute Bennett's estate or personal representative, Bennett's counsel moved to dismiss the case. Leighton then moved for substitution, arguing the period for seeking substitution had not yet commenced because Bennett's counsel had not served Bennett's estate or personal representative. The circuit court determined Leighton's motion was untimely under the rules of civil procedure and granted Bennett's motion to dismiss. Leighton appeals, arguing the circuit court erred when it interpreted the applicable rule of civil procedure or, alternatively, the circuit court abused its discretion when it denied her motion for enlargement of the time to seek substitution. We affirm.

### Background

[¶2.] Leighton and Bennett were involved in a motor vehicle accident on May 23, 2013, in Brookings. Leighton alleged that Bennett rear-ended her vehicle while she was stopped at a stoplight, and she commenced this action against Bennett on May 18, 2016. Bennett's counsel filed an answer to Leighton's complaint on June 2, 2016. Bennett died on July 24, 2017, and his defense counsel served a notice of death (also known as a "suggestion of death") on Leighton's counsel on August 24, 2017.

[¶3.] On December 11, 2017, Bennett's defense counsel moved to dismiss Leighton's action, citing SDCL 15-6-25(a)(1), which requires dismissal "[u]nless

substitution is made not later than ninety days after death is suggested[.]" Leighton then moved to substitute Bennett's estate on December 18, 2017—116 days after being served the notice of death—serving Bennett's defense counsel by mail and obtaining an admission of personal service from counsel for Bennett's estate.

[¶4.]     Leighton argued her motion to substitute was timely under SDCL 15-6-25(a)(1) because the 90-day deadline for seeking substitution did not begin to run until Bennett's defense counsel served her *and* also served Bennett's estate or personal representative.  In her view, the August 24, 2017 notice of death served only upon her was insufficient to trigger the 90-day deadline for substitution.  Alternatively, Leighton requested an enlargement of the 90-day period, claiming excusable neglect.   Leighton argued counsel's noncompliance with SDCL 15-6-25(a)(1) deprived her of any information about Bennett's estate.

[¶5.]     The circuit court conducted a hearing on the motions on February 1, 2018, and concluded that Leighton's motion to substitute was untimely.  The court also denied Leighton's motion for enlargement of the 90-day period and dismissed the action.  In its subsequent written findings of fact and conclusions of law, the court reasoned that Bennett's counsel "was not required to serve the Notice of Death of Party upon his client's own estate in order to trigger the 90-day period prescribed in SDCL 15-6-25(a)(1)."  The court also concluded that Leighton's counsel had not demonstrated excusable neglect for filing an untimely motion to substitute Bennett's estate.

[¶6.]      We consolidate Leighton's issues on appeal and restate them as

follows:

> 1.      Whether the circuit court erred when it concluded that
> SDCL 15-6-25(a)(1)'s 90-day period for substitution of a
> party began to run when Bennett's defense counsel served
> a notice of death on Leighton without serving Bennett's
> estate or personal representative.
>
> 2.      Whether the circuit court abused its discretion when it
> denied Leighton's motion for an enlargement of time and
> dismissed her action as untimely.

## Analysis

### *Timeliness of Leighton's Motion to Substitute*

[¶7.]      We review legal questions arising under the rules of civil procedure de

novo, utilizing our established rules for statutory construction. *Moore v. Michelin

Tire Co., Inc.*, 1999 S.D. 152, ¶ 16, 603 N.W.2d 513, 519–20. In this regard, we have

expressed the essential principles of statutory construction in the following terms:

> [t]he purpose of statutory construction is to discover the true
> intention of the law which is to be ascertained primarily from
> the language expressed in the statute. The intent of a statute is
> determined from what the legislature said, rather than what the
> courts think it should have said, and the court must confine
> itself to the language used. Words and phrases in a statute
> must be given their plain meaning and effect. When the
> language in a statute is clear, certain and unambiguous, there is
> no reason for construction, and the Court's only function is to
> declare the meaning of the statute as clearly expressed.

*Discover Bank v. Stanley*, 2008 S.D. 111, ¶ 15, 757 N.W.2d 756, 761 (quoting

*Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611).

[¶8.]      Our rules of civil procedure provide an expedient means to seek the

substitution of a proper party following the death of a party during the pendency of

an action.

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in § 15-6-5 and upon persons not parties in the manner provided in § 15-6-4 for the service of a summons. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

SDCL 15-6-25(a)(1).

[¶9.]        The provisions of SDCL 15-6-25(a)(1) feature notable flexibility. The rule allows parties or interested non-parties the ability to provide notice of the death and seek substitution. The text of the rule does not *require* any surviving party or non-party to provide notice of a deceased party's death. However, if a notice of death is served, SDCL 15-6-25(a)(1) prescribes the procedure for would-be movants to promptly effect substitution, with the stern consequence of dismissal for noncompliance.

[¶10.]        We have previously interpreted SDCL 15-6-25(a)(1), but our earlier decisions do not address the specific question presented here. For instance, in *Ripple v. Wold* (*Ripple II*), we held that non-parties, such as a deceased party's successors or representatives, must be personally served with a suggestion of death—as opposed to being served by mail through counsel—in order to trigger the 90-day deadline for substitution. 1997 S.D. 135, ¶ 17, 572 N.W.2d 439, 443-44. However, this conclusion addressed only the manner of service and was based upon a plain reading of SDCL 15-6-25(a)(1), which specifically requires personal service upon non-parties. Significantly, in *Ripple II* we were not confronted with the

question of whether the notice of death must be served upon a party or non-party who does not seek substitution.

[¶11.]     Nor were we faced with this issue in *Swenson v. Brown*, 2009 S.D. 64, ¶ 10, 771 N.W.2d 313, 316, where we held that an attorney for a deceased party had the authority to file and serve notice of a client party's death.  In doing so, we noted the existence of divergent authority outside of our state and found persuasive the analysis of the Utah Supreme Court in *Stoddard v. Smith*, 27 P.3d 546, 546–47 (Utah 2001).  Although we observed in our factual summation that the parties and the successor estate for the deceased party had both been served in *Swenson,* we did not endorse this as a requirement of SDCL 15-6-25(a)(1) or a necessary predicate for commencing the 90-day deadline for substitution.

[¶12.]     Here, as a matter of first impression, we conclude that the circuit court correctly determined that the 90-day period to seek substitution commenced when Bennett's counsel served the notice of death upon Leighton.  The text of SDCL 15-6-25(a) contemplates a motion for substitution within 90 days "after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion[.]"  Here, Bennett's counsel complied with the service requirements by mailing the notice of death to Leighton's counsel as permitted by the rule and by SDCL 15-6-4.  The parties agree that Leighton was served on August 24, 2017.  However, she failed to seek substitution within the ensuing 90 days, ultimately moving to substitute Bennett's estate only after receiving Bennett's motion to dismiss.

[¶13.]    Leighton interprets the final sentence of SDCL 15-6-25(a)(1) differently. In her view, the text that prescribes "service . . . as provided herein for the service of the motion" means that the notice of death, like the motion for substitution, must be served upon surviving parties and interested non-parties, such as an estate or personal representative. However, we believe that Leighton's comparison between service of the motion for substitution and service of the notice of death is not apt. In our view, this text merely refers to the *method* of service for the notice of death upon parties and non-parties, not a *requirement* to serve both. The Utah Supreme Court reached the same conclusion in *Stoddard* when confronted with a similar issue.

> The language in rule 25(a)(1) providing that the suggestion of death should be served "as provided herein for the service of the motion" also speaks to *how* service of the suggestion of death must be made. It must be served on the parties in accordance with rule 5, and it must be served on any nonparties who are served at all in the manner provided by rule 4. Plaintiff's interpretation of the rule, that the rule mandates that at least one unspecified nonparty must be served with the suggestion of death for the suggestion of death to trigger the 90-day limitation period, is incorrect. There is no definition for, or limitation of, the category of "persons not parties." The rule does not define "persons not parties" *because the rule does not prescribe who must be served with the suggestion of death, but rather how they are served, once a party decides which nonparties, if any, need to be served with the suggestion of death.*

27 P.3d at 550 (second emphasis added).

[¶14.]    Also incorrect, in our view, is Leighton's argument that SDCL 15-6-25(a)(1) places the burden on Bennett's defense counsel to effectively determine who Leighton should seek to substitute. The text of the rule does not support this interpretation. Instead, the provisions of the rule allow both parties and non-

parties to provide notice of death or move to substitute, but imposes no requirement upon any party, non-party, or attorney. *See* ¶ 9, *supra.* As the record here illustrates, once Leighton received Bennett's motion to dismiss, she quickly identified Bennett's estate and served it without any apparent difficulty. In fact, though she was not obligated to do so, Leighton could have sought substitution at any time after learning of Bennett's death without regard to service of the notice of death. Indeed, the *commencement* of the 90-day deadline has no talismanic significance to a movant's ability to seek substitution. SDCL 15-6-25(a)(1); *see also* Fed. R. Civ. P. 25(a) advisory committee's note to 1963 amendment (noting that a prospective movant does not need to wait for service of a notice of death before moving to substitute a party).

[¶15.] The parties' briefs principally focus upon this Court's previous decisions, but our own research reveals differing views expressed by other courts on the question of whether a suggestion of death must be served upon all parties and non-parties in order to commence the 90-day period. *See, e.g., Grandbouche v. Lovell*, 913 F.2d 835, 837 (10th Cir. 1990) (failure to serve the personal representative is insufficient to trigger 90-day period). We believe our analysis here is correct, though, because it more faithfully applies the text of SDCL 15-6-25(a)(1). The contrary views of other courts exalt a strained formulaic approach over the plain text of this pragmatic rule, which is designed to provide relatively swift and certain substitution. We recognized the utility of the rule for this purpose in *Swenson* when we held that the attorney of a deceased party has the authority to file and serve a notice of a client's death.

> In the absence of such an interpretation, the case could continue in the decedent's name pending another suggestion of death, although her counsel's representation has since ceased under the rule—a paradox that would exist if this Court were to hold the suggestion of death ineffective because the decedent's attorney is not qualified to serve the notice as the result of his client's death.

2009 S.D. at ¶ 12, 771 N.W.2d at 317.

***Leighton's Motion for Enlargement of Time***

[¶16.]     Subject to limited exceptions not applicable here, SDCL 15-6-6(b) allows for the enlargement of time periods prescribed by the rules of civil procedure.

> When by this chapter or by a notice given thereunder or by an order of court an act is required or allowed to be done at or within a specified time, the court *for cause shown may at any time in its discretion*:
> . . .
> (2) *Upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*

*Id.* (emphasis added).∗ "[W]e review a grant or denial of enlargement of time to file . . . under the abuse of discretion standard." *Donald Bucklin Constr. v. McCormick Constr. Co.*, 2013 S.D. 57, ¶ 16, 835 N.W.2d 862, 866 (quoting *Colton Lumber Co. v. Siemonsma*, 2002 S.D. 116, ¶ 7, 651 N.W.2d 871, 873). An abuse of discretion is "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Supreme Pork,*

---

∗     Rule 6 of the Federal Rules of Civil Procedure previously excepted Rule 25, which meant the 90-day period was not subject to enlargement. However, Rule 6 was amended in 1963 to remove the Rule 25 exception at the same time Rule 25, itself, was amended to ameliorate other harsh effects created by the earlier version. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1955 (3d ed. 2018).

*Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 57, 764 N.W.2d 474, 490 (quoting *Hogen v. Pifer*, 2008 S.D. 96, ¶ 9, 757 N.W.2d 160, 163).

[¶17.]     Where, as here, the 90-day deadline provided by the rules expired before Leighton moved for enlargement of time, we have identified the following principles to guide our excusable neglect analysis.

> Excusable neglect in the context of SDCL 15-6-6(b)(2) "is closely analogous to the excusable neglect which must be shown to set aside a default judgment or other final judgment under SDCL 15-6-55(c) and SDCL 15-6-60(b)." "Excusable neglect must be neglect of a nature that would cause a reasonable, prudent person to act similarly under similar circumstances." "Excusable neglect' has no fixed meaning and should be 'interpreted liberally to insure that cases are heard and tried on the merits."

*Bucklin*, 2013 S.D. 57, ¶ 21, 835 N.W.2d at 867 (internal citations omitted).

[¶18.]     We recently applied this standard and held that a circuit court abused its discretion when it refused to allow an enlargement of time for plaintiffs to file complaints after they commenced their action with a summons and later overlooked the defendant's demand to serve a complaint. *See S.D. Pub. Assurance All. for Pennington Cty. v. McGuire*, 2018 S.D. 75, ¶ 17, 919 N.W.2d 745, 750. In *McGuire*, the plaintiffs' attorneys submitted affidavits in which they "readily admitted their mistakes[,]" detailed mitigating circumstances, and described their efforts to undertake prompt remedial action. *Id.* ¶ 17, 919 N.W.2d at 750; *see also Estes v. Ashley Hosp., Inc.*, 2004 S.D. 49, ¶ 13, 679 N.W.2d 469, 474 (A party seeking to establish excusable neglect under SDCL 15-6-60(b) has "the burden of bringing forth evidence to support [her] claims.").

[¶19.] Here, by contrast, the record contains no such factual showing by Leighton's counsel. Although Leighton's counsel invokes the excusable neglect standard, counsel did not submit an affidavit to the circuit court or otherwise provide a factual basis that could support a finding of excusable neglect. Rather, Leighton's counsel argues excusable neglect based upon the claim that Bennett's defense counsel acted improperly by not advising her of the existence of Bennett's estate. However, this is essentially the same claim offered on the merits of Leighton's principal argument.

[¶20.] Leighton's reply brief does contain a passing reference to the unsettled nature of SDCL 15-6-25(a)(1)'s service requirements. However, this is solely a legal argument that was not made to the circuit court and is insufficient to support a factual finding of excusable neglect. Simply put, the record does not establish that Leighton failed to act within the 90-day deadline *because* she had an erroneous view of an unsettled area of law. Indeed, any uncertainty concerning the 90-day deadline would seem to heighten the need to take action sooner, rather than later. Without a sufficient factual record in this regard, we, like the circuit court, are left to speculate about why Leighton did not take action earlier.

[¶21.] We acknowledge that our interpretation of SDCL 15-6-25(a)(1) creates the potential for the harsh result of dismissal in cases where a party fails to seek substitution within 90 days following service of notice of death. However, our rules of civil procedure allow for the enlargement of time periods and deadlines, such as the one in SDCL 15-6-25(a)(1), and operate to temper the potential for the harsh result of reflexive dismissal. Here, though, without any action by Leighton during

the 90-day period to confirm or dispel her understanding of the rule and no other factual showing of excusable neglect, the circuit court acted within its discretion when it denied Leighton's motion for an enlargement of time.

## Conclusion

[¶22.] The plain text of SDCL 15-6-25(a)(1) does not require service of the notice of death on the decedent's estate or personal representative. Therefore, the circuit court did not err in its interpretation of the rule. Further, the circuit court did not err when it denied Leighton's motion for substitution as untimely. The circuit court also did not abuse its discretion when it denied Leighton's motion for enlargement due to an insufficient factual showing to support a finding of excusable neglect. Under the circumstances, the circuit court did not err when it dismissed Leighton's case.

[¶23.] We affirm.

[¶24.] GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, and SEVERSON, Retired Justice, concur.