#29561-a-PJD
**2022 S.D. 25**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JEROME POWERS,                                        Plaintiff and Appellant,

  v.

DENNIS POWERS,                                        Defendant and Appellee,

  and

PREVAILING WINDS, LLC and
PREVAILING WIND PARK, LLC,                            Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CHARLES MIX COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DAVID KNOFF
Judge

* * * *

R. SHAWN TORNOW
Sioux Falls, South Dakota                             Attorney for plaintiff and
                                                      appellant.


JOHN P. BLACKBURN of
Blackburn & Stevens, Prof. LLC
Yankton, South Dakota                                 Attorneys for defendant and
                                                      appellee Dennis Powers.

* * * *

ARGUED
NOVEMBER 8, 2021
OPINION FILED **05/11/22**

PATRICK D.J. MAHLBERG
LISA M. AGRIMONTI of
Fredrikson & Byron, P.A.
Minneapolis, Minnesota

JOSEPH ERICKSON
LEE SCHOENBECK of
Schoenbeck Law, P.C.
Watertown, South Dakota                    Attorneys for defendants and
                                           appellees Prevailing Winds,
                                           LLC and Prevailing Wind Park,
                                           LLC.

#29561

DEVANEY, Justice

[¶1.]        This appeal concerns the interpretation of a right of first refusal

entered into by Jerome Powers and his son, Dennis Powers, related to

approximately 630 acres of agricultural property.  After Dennis entered into a wind

energy lease and easement agreement with Prevailing Wind Park, LLC (Prevailing

Wind), Jerome brought suit against Dennis and Prevailing Wind, alleging breach of

contract and seeking declaratory relief and specific performance.  Prevailing Wind

moved for summary judgment, asserting that the right of first refusal was not

triggered and, alternatively, that it is void as an unreasonable restraint on

alienation.  Dennis joined Prevailing Wind's motion, and after a hearing, the circuit

court granted summary judgment dismissing all claims against both defendants.

The court interpreted the right of first refusal to apply only to fee interest transfers

of the property and, alternatively, concluded that it is void as an unreasonable

restraint on alienation.  Jerome appeals, and we affirm.

## Factual and Procedural Background

[¶2.]        In 2003, Jerome and Dennis jointly purchased roughly 630 acres of

land in Bon Homme and Charles Mix counties for less than fair market value on a

contract for deed from Jerome's parents/Dennis's grandparents.  Thereafter, Jerome

and Dennis farmed the property together.  In 2005, Jerome sought to sell his

interest in the property because he was facing a prison sentence related to illegal

drug activity.  Jerome testified that he wanted to keep the property in the family

and not burden his wife with debt.  He also testified that his siblings did not want

to purchase his interest in the property, but that Dennis, who was 22 years old at

-1-

#29561

the time, expressed interest. In the spring of 2005, Jerome quitclaimed his interest in the property and assigned his interest in the contract for deed to Dennis. Dennis paid Jerome the amount that Jerome had paid on the contract, and then Dennis became responsible for the remaining amount due on the entire contract for deed.

[¶3.]     As part of the transfer of ownership, Jerome and Dennis executed a "First Right of Refusal" (ROFR).[1] The ROFR provides in relevant part:

SECTION TWO
FIRST RIGHT OF REFUSAL

In the event GRANTOR [Dennis] offers the above-described property, or any interest therein, for sale, transfer or conveyance, GRANTOR shall not sell, transfer, or convey the above-described property, nor any interest therein, unless and until he shall have first offered to sell such property or any interest therein, to GRANTEE [Jerome]. If GRANTOR intends to make a bona fide sale of the above-described property, or any interest therein, he shall give to GRANTEE written notice of such intention, which notice shall contain the basic terms and conditions demanded by GRANTOR for the sale of such property.

Within thirty (30) days of receipt of such notice and information, GRANTEE [Jerome] shall either exercise his First Right of Refusal by providing written notice of his acceptance to GRANTOR [Dennis], or waive his First Right of Refusal by failing to provide GRANTOR with such written notification of his acceptance or rejection of the First Right of Refusal within such time.

SECTION THREE
TERMS

Should GRANTOR [Dennis] accept the offer of GRANTEE [Jerome] to purchase the property, it shall be on the following terms:

---

1.    Jerome and Dennis executed two rights of first refusal because the property was located in two counties. The relevant language in each document is identical.

-2-

1. GRANTEE shall pay GRANTOR the sum of $420.00 per acre, which shall be paid in cash or cash equivalent at closing.
2. GRANTOR shall convey fee title, which title shall be merchantable, as shown by abstract or title insurance.
3. Closing shall take place within thirty (30) days of GRANTOR delivering title insurance or abstracts to the property.
4. GRANTEE shall have possession of the property at closing.

If GRANTEE [Jerome] fails to exercise his First Right of Refusal, GRANTOR [Dennis] may proceed to sell, transfer and convey the property to any other person or entity free from any restrictions of this Agreement.

[¶4.] After the purchase, Dennis continued to personally farm the property. He testified that he converted 230 acres from pastureland into more valuable, tillable cropland. He also testified that he and Jerome entered into an oral agreement whereby Jerome could use the property for his hunting business. In 2006 or 2007, Dennis gave an easement to the B-Y Water District to install a pipeline to deliver rural water to his residence on the property. Jerome testified that he was aware that the pipe was being installed but not that an easement was involved.

[¶5.] In 2010, Dennis decided to stop farming the land himself and began to pursue other business interests. He planned to lease the land to third parties and claimed that he talked about his plan with his grandfather and Jerome. In 2011, Dennis entered into an oral lease agreement with a third party for the property. Jerome testified that he was aware of this lease. In 2012, Dennis paid off the balance on the contract for deed. He then deeded a one-half interest in the property to his wife, April, via warranty deed. Between 2013 and 2017, Dennis and April

entered into multiple financing agreements related to the property. Dennis also entered into additional lease agreements with third parties for the property after the 2011 lease. Jerome testified that he was aware that Dennis leased the property to other third parties after 2011.

[¶6.] In 2017, Prevailing Wind applied for a permit from the South Dakota Public Utilities Commission for a wind farm, which involved obtaining lease agreements and easements from property owners in Bon Homme and Charles Mix counties. Dennis was interested in participating in Prevailing Wind's project and was given a draft of the wind energy lease and easement agreement. Jerome, on the other hand, did not support Prevailing Wind's application request and attended public meetings to voice objections against the project because, in his view, it would cause adverse health effects and have a negative impact on his hunting business. In 2018, Dennis and April entered into a wind energy lease and easement agreement (Agreement) with Prevailing Wind. The parties dispute whether Dennis and Jerome discussed the terms of the ROFR prior to Dennis and April signing the Agreement, but it is undisputed that Dennis's decision strained Jerome and Dennis's relationship.

[¶7.] Prevailing Wind was aware of the ROFR and, in 2019, requested that Jerome consent to the Agreement between Prevailing Wind and Dennis and April. Jerome refused, and in June 2019, he brought suit against both Dennis and Prevailing Wind. He alleged that Dennis's act of entering into the Agreement triggered the ROFR and that Dennis breached the ROFR by failing to first offer the entire property for sale to Jerome. Jerome sought declaratory relief, requesting

that the circuit court find the ROFR enforceable and order specific performance as the remedy. Jerome also alleged that because of Dennis's breach of the ROFR, he is entitled to purchase the property "unencumbered" by Prevailing Wind's lease and easement. Finally, Jerome requested that the court void the Agreement because, in his view, it was obtained in violation of the ROFR.

[¶8.] Prevailing Wind's answer asserted affirmative defenses, including waiver, laches, and that Jerome's claims were barred by the statute of limitations. In a separate answer, Dennis asserted multiple defenses, including that the ROFR is void as an unreasonable restraint on alienation. After taking deposition testimony from Dennis and Jerome, Prevailing Wind filed a motion for summary judgment stating that the motion "is supported by the accompanying" statement of undisputed material facts, affidavits, and "all of the filings and proceedings herein." Prevailing Wind also filed a brief, labeled as a "memorandum in support." Dennis filed a joinder, indicating that he "has and does join" Prevailing Wind's motion for summary judgment and memorandum in support and later filed a joinder in Prevailing Wind's reply brief.

[¶9.] The summary judgment motion and Jerome's opposition to the same centered on the interpretation of the ROFR. Prevailing Wind argued that the language in Section Two, referring to the sale, transfer, or conveyance of "any interest therein," means only fee simple sales, transfers, or conveyances. As support, Prevailing Wind relied on the language of the ROFR as a whole and, in particular, pointed to the remaining language in the ROFR referencing a sale of the property and that the property was to be conveyed to Jerome in "fee title." In

response, Jerome claimed that Prevailing Wind's interpretation rewrites or adds words to the ROFR. Focusing on the language of Section Two, he asserted that the ROFR unambiguously provides that Dennis cannot sell, transfer, or convey *any interest* in the property *unless and until* he offers to sell the property to Jerome.

[¶10.]     Prevailing Wind alternatively argued that summary judgment would be appropriate because the undisputed material facts establish that the ROFR, as interpreted by Jerome, is an unreasonable restraint on alienation. Prevailing Wind also asserted that Jerome failed to timely commence his claim under the ROFR, waived his right to enforce the ROFR, and should otherwise be barred from enforcing the ROFR based on laches. In response, Jerome claimed that he timely commenced his suit and that the restraint is reasonable as a matter of law. He alternatively asserted that there are material issues of fact in dispute on the reasonableness of the restraint and on Prevailing Wind's affirmative defenses.

[¶11.]     Following a hearing on Prevailing Wind's motion, the circuit court issued a memorandum decision. It noted that the "dispute hinges on the phrase 'or any interest therein'" in Section Two of the ROFR and explained that summary judgment would be appropriate on all claims if the ROFR applies only to an interest in fee title because "[t]here is no dispute that fee ownership has not been transferred." The circuit court examined the phrase "any interest therein" in the context of the entire ROFR. The court determined that the language in Section Three "is helpful in analyzing the intent of the" ROFR. In particular, the court noted that Section Three refers to transferring fee interest from Dennis to Jerome.

[¶12.] Ultimately, the court concluded that the ROFR "clearly contemplates only a fee simple sale of the real estate or a portion (in fee) of the real estate." The court then stated that this interpretation "is consistent with the inaction of Jerome when he had knowledge of the property being leased in the past (which he now claims is a violation of the [ROFR])." Alternatively, the circuit court determined that even if the ROFR is ambiguous or applies to interests transferred in less than fee, "this would, as a matter of law, render the [ROFR] void as a restraint against alienation." The court noted that under Jerome's interpretation of the ROFR, in order to avoid the risk of having to sell the entire property to Jerome for far less than fair market value, Dennis is prohibited, absent Jerome's permission, from doing anything other than farming the property himself.

[¶13.] The court granted Prevailing Wind's motion, joined by Dennis, for summary judgment based on the court's determination that the ROFR is unambiguous and intended "to apply to fee interest transfers of the property." Jerome appeals, claiming that the circuit court could not enter summary judgment in favor of Dennis when he did not join Prevailing Wind's statement of undisputed material facts or file his own. Jerome further asserts that the circuit court erred in its interpretation of the ROFR and thereby erred in granting Prevailing Wind's motion for summary judgment.[2]

---

2. Jerome also contends that there are material issues of fact in dispute precluding summary judgment on the alternative determination that the ROFR is void as an unreasonable restraint on alienation. Because of our ruling on the first two issues, it is unnecessary to address this additional argument.

## Standard of Review

[¶14.] As this Court recently explained, "[o]n review of a decision granting summary judgment, 'we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law.'" *Olson v. Berggren*, 2021 S.D. 58, ¶ 12, 965 N.W.2d 442, 447 (quoting *Hanna v. Landsman*, 2020 S.D. 33, ¶ 21, 945 N.W.2d 534, 541). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c).

## Analysis and Decision

### 1. Whether the circuit court could enter summary judgment in favor of Dennis when he did not join Prevailing Wind's statement of undisputed material facts or file his own.

[¶15.] Jerome first raises a procedural matter, contending that because Dennis did not specifically join Prevailing Wind's statement of undisputed material facts or file his own statement of undisputed material facts, he could not obtain summary judgment in his favor. He directs this Court to the language in SDCL 15-6-56(c)(1) that "[a] party moving for summary judgment shall attach to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."

[¶16.] "We review legal questions arising under the rules of civil procedure de novo, utilizing our established rules for statutory construction." *Leighton v. Bennett*, 2019 S.D. 19, ¶ 7, 926 N.W.2d 465, 467–68 (citing *Moore v. Michelin Tire*

*Co., Inc.*, 1999 S.D. 152, ¶ 16, 603 N.W.2d 513, 519–20). In *Discover Bank v. Stanley*, this Court identified that "SDCL 15-6-56 provides the procedure for when and how a motion for summary judgment may be filed with a circuit court." 2008 S.D. 111, ¶ 18, 757 N.W.2d 756, 762. Applying rules of statutory interpretation, the Court concluded that the use of the word "shall" in SDCL 15-6-56(c)(1) means that the party moving for summary judgment must attach a statement of undisputed material facts to the motion.[3] *Id.* ¶ 24, 757 N.W.2d at 763–64.

[¶17.] Here, Prevailing Wind was the moving party and was thus required to, and did, include a statement of undisputed material facts as required by SDCL 15-6-56(c)(1). By joining Prevailing Wind's motion for summary judgment and its memorandum in support, Dennis thereafter joined by implication Prevailing Wind's accompanying statement of undisputed material facts, many of which were referenced in the memorandum. While joining parties could specify that they are not joining certain arguments or statements made in the other party's motion, brief, or the accompanying documents, no such limitation was set forth in Dennis's joinder here.

---

3. In *Discover Bank*, this Court noted that "[t]he party opposing a motion for summary judgment should not have to guess at what its opponent plans to present in court." 2008 S.D. 111, ¶ 25, 757 N.W.2d at 764. We further noted that if the moving party does not file the statement of undisputed material facts, the opposing party is denied "the opportunity to submit his mandatory statement controverting" the moving party's statement of undisputed facts. *Id.* ¶ 26. Neither concern is present here. Prevailing Wind, the moving party, provided a statement of undisputed material facts informing Jerome about what would be presented in court, and Jerome had an opportunity to respond and submitted his statement controverting certain alleged undisputed material facts.

[¶18.] However, Jerome further asserts that notwithstanding the fact that Dennis joined Prevailing Wind's summary judgment motion, because Prevailing Wind is not a party to the breach of contract claim related to Dennis's failure to give the required notice under the ROFR, the circuit court could not grant Dennis summary judgment on this particular claim. While such an argument may have merit in other scenarios, here, whether Dennis was required to give notice under the ROFR (and thus whether a breach occurred) depends directly on the interpretation of the ROFR or, alternatively, on whether the ROFR is void as an unlawful restraint on alienation. When the circuit court concluded that the ROFR does not apply to sales, transfers, and conveyances of less than fee simple interest or, in the alternative, that the ROFR is void as an unlawful restraint against alienation, Jerome's breach of contract claim against Dennis failed as a matter of law, regardless of whether Dennis joined in Prevailing Wind's summary judgment motion.

### 2. *Whether the circuit court erred in its interpretation of the ROFR and thereby erred in granting Prevailing Wind's motion for summary judgment.*

[¶19.] Jerome asserts that the circuit court erroneously interpreted the ROFR to apply only to fee simple sales, transfers, or conveyances in whole or in part. He claims that the ROFR unambiguously provides in Section Two that the right of first refusal is triggered if Dennis intends to sell, transfer, or convey "any interest therein" and notes the absence of any language limiting such transactions to those involving a sale in *fee simple* to a third party. Thus, in Jerome's view, the

#29561

circuit court, in direct contravention of this Court's rules of contract interpretation, added words to the ROFR that the parties did not include.[4]

[¶20.] "Contract interpretation is a question of law reviewable de novo." *Laska v. Barr* (*Laska I*), 2016 S.D. 13, ¶ 5, 876 N.W.2d 50, 52 (quoting *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354). This Court gives no deference to the circuit court's interpretation; "we can review the contract as easily as the" circuit court. *Com. Tr. & Sav. Bank v. Christensen*, 535 N.W.2d 853, 856 (S.D. 1995). "When interpreting a contract, this Court looks to the language that the parties used in the contract to determine their intention." *McKie Ford Lincoln, Inc. v. Hanna*, 2018 S.D. 14, ¶ 9, 907 N.W.2d 795, 798 (quoting *Charlson v. Charlson*, 2017 S.D. 11, ¶ 16, 892 N.W.2d 903, 908). This Court has also said that "to ascertain the terms and conditions of a contract, we

---

4. Jerome also contends that the court improperly relied on parol evidence, namely Jerome's deposition testimony, to ascertain the parties' intent. A review of the court's memorandum decision reflects that it did refer to inconsistencies in Jerome's deposition testimony. However, the court did not use this extrinsic evidence to rewrite or alter the terms of the ROFR or to determine the parties' intent. *See, e.g., Edgar v. Mills*, 2017 S.D. 7, ¶ 29, 892 N.W.2d 223, 231 (providing that it is improper to use parol evidence to rewrite or add words to an unambiguous contract). Rather, the court determined the parties' intent based on the language in the ROFR. *See Black Hills Excavating Servs., Inc. v. Retail Const. Servs., Inc.*, 2016 S.D. 23, ¶ 10, 877 N.W.2d 318, 322 (noting that when a contract is unambiguous, the intent of the parties is to be derived from within the four corners of the contract). In particular, the court relied on the language from Sections Two and Three, not on extrinsic evidence, when it determined that the parties intended the ROFR to apply only to transfers in fee. It was only after this determination that the court identified that its interpretation was consistent with Jerome's deposition testimony that he did not take action under the ROFR when he had knowledge of Dennis leasing the property in the past.

examine the *contract as a whole* and give words their plain and ordinary meaning." *Id.* (emphasis added) (citation omitted).

[¶21.]      Based on a review of the language of the ROFR as a whole, the circuit court properly rejected Jerome's interpretation. Section Two provides that if Dennis offers for sale, transfer, or conveyance, the property or any interest therein, he must first offer "to *sell* such property or any interest therein" to Jerome. (Emphasis added.) The next sentence then provides that if Dennis "intends to make a bona fide *sale*" of the property or any interest therein, he must give written notice to Jerome of the terms and conditions he is demanding "for the *sale* of *such* property." (Emphasis added.) Although Jerome contends that the phrase "any interest therein" includes easements and leases, granting an easement or entering into a lease with a third party are not transactions commonly characterized as a "sale, transfer, or conveyance." Moreover, the phrase "any interest therein" cannot be read in isolation from the entire ROFR. As used in the following sentence, the phrase "property or any interest therein" precedes language referring to Dennis's bona fide *sale* of "such property"; thus, it is clear that this paragraph refers to a sale, transfer, or conveyance of an *ownership* interest in the property. Finally, under Section Three, the terms of the *sale* to Jerome once he exercises his right "to *purchase* the property" require Dennis to convey "fee title" to Jerome. (Emphasis added.)

[¶22.]      However, Jerome takes issue with any reliance on the language in Section Three when interpreting Section Two. In his view, Section Three "only becomes applicable" *after* Dennis provides Jerome, under Section Two, the required

notice in writing that he intends to sell, transfer, or convey the property or any interest therein. Jerome then contends that the triggering event in Section Two has yet to occur because Dennis never gave Jerome written notice of his intent to sell, transfer, or convey any interest in the property, and thus Section Three is immaterial.

[¶23.]     Jerome's argument confuses a court's review of the terms of a contract to determine the parties' intent with a review of the terms of a contract to determine whether the underlying facts establish that a breach has occurred. The question at this juncture is not whether a triggering event occurred under the ROFR such that other provisions within the contract are implicated. Rather, this Court must determine whether, as asserted by Jerome, the language of the ROFR evinces the parties' intent that it applies to sales, transfers, and conveyances of the property in less than fee simple interest, or whether, as determined by the circuit court, the language of the ROFR indicates the parties' intent that it applies only to transfers in fee.[5] To answer this question, "[w]e must 'give effect to the language of the *entire contract*[,] and particular words and phrases are not interpreted in

_____

5.     Although we reject Jerome's request to read Section Two in isolation and his interpretation of this Section to include leases and easements, we note that Jerome's interpretation of Section Two does not support his view that the ROFR would then give him the right to purchase the *entire* property in the event Dennis intends to transfer or convey only an interest in the property. Section Two provides that Dennis cannot sell, transfer, or convey the property or any interest in the property until he offers "to sell *such* property or *any interest therein*" to Jerome. (Emphasis added.) This language (read in isolation) suggests that Jerome would only have a right to purchase the same interests Dennis conveyed to Prevailing Wind—a wind energy lease and easement.

isolation.'" *Lillibridge v. Meade Sch. Dist.*, 2008 S.D. 17, ¶ 12, 746 N.W.2d 428, 432 (emphasis added) (citation omitted).

[¶24.]     Applying the rules of contract interpretation here, the ROFR as a whole indicates that the parties intended the ROFR to apply only to sales, transfers, and conveyances of the property or any interest therein in fee simple.  Because it is undisputed that Dennis's Agreement with Prevailing Wind did not involve a sale, transfer, or conveyance in fee, the circuit court properly granted Prevailing Wind's motion for summary judgment on all claims.

[¶25.]     Affirmed.

[¶26.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.