#29153-a-DG
**2020 S.D. 64**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SACRED HEART HEALTH SERVICES,
INC., dba AVERA SACRED HEART
HOSPITAL,                                              Plaintiff and Appellant,

    v.

YANKTON COUNTY, SOUTH DAKOTA,          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DAVID KNOFF
Judge

* * * *

ROBERT R. NELSON
Sioux Falls, South Dakota                     Attorney for plaintiff
                                              and appellant.


DOUGLAS M. DEIBERT of
Cadwell, Sanford, Deibert
   & Garry, LLP
Sioux Falls, South Dakota                     Attorneys for defendant
                                              and appellee.

* * * *

CONSIDERED ON BRIEFS
AUGUST 24, 2020
OPINION FILED **11/18/20**

#29153

GILBERTSON, Chief Justice

[¶1.]     Sacred Heart Health Services, Inc., d/b/a Avera Sacred Heart Hospital (Hospital), filed a declaratory judgment action against Yankton County (County) seeking a declaration of the County's liability and reimbursement for charges for the medical care and treatment of patients subject to an emergency hold, under SDCL chapter 27A-10.  The parties filed cross-motions for summary judgment.  The circuit court entered a memorandum decision in favor of the Hospital.  The County objected and filed a motion to reconsider.  After a second hearing on the motions for summary judgment, the circuit court issued a second memorandum decision in favor of the County and entered a corresponding order and judgment.  The Hospital appeals.  We affirm.

**Facts and Procedural History**

[¶2.]     In February 2016, the Hospital filed a declaratory judgment action against the County seeking a declaration of the County's liability and seeking reimbursement for the hospitalization and medical treatment provided to patients, who were subject to an emergency mental illness hold, under SDCL chapter 27A-10.

[¶3.]     Under SDCL chapter 27A-10, a person believed to be severely mentally ill and in need of immediate intervention, may be placed on a 24-hour emergency hold to protect the person or others from physical harm.  SDCL 27A-10-19.  A qualified mental health professional (QMHP) initiates the hold process and submits a petition for emergency commitment to the chair of a county's board of mental illness (Chair).  *Id.*  The patient then undergoes an evaluation, which the Chair uses to determine if the hold should continue.  SDCL 27A-10-16.  The evaluation is done

-1-

by a QMHP at an appropriate regional facility.[1] *Id.* After the evaluation, the QMHP sends the findings to the Chair. SDCL 27A-10-6. The Chair then determines whether the patient meets the criteria for an involuntary commitment under SDCL 27A-1-2. If not, SDCL 27A-10-7 requires the person to be released. But if the individual meets the criteria, the Chair may order a continued hold at a regional facility pending the hearing required under SDCL 27A-10-8 before an order of involuntary commitment may be entered. While SDCL 27A-10-7 authorizes the interim hold to be at the South Dakota Human Services Center (HSC), the South Dakota Department of Social Services (DSS) has promulgated Guidelines for Medical Screening (Guidelines) as part of HSC's admission process to ensure a patient is medically cleared for transfer to HSC prior to admission. Therefore, patients who are not medically cleared for HSC are held instead at the regional facility in the interim.

[¶4.] If the Chair determines the person should be held, the person remains at the regional facility for up to five days (or up to seven days if there are weekends and holidays within this time period) during which time the person is entitled to an involuntary commitment hearing. SDCL 27A-10-8. After the hearing, the person is either released or committed and transferred to HSC once medically cleared.

[¶5.] In this matter, the twenty-three disputed claims involve the medical care provided to patients admitted and held under this process while their commitment hearings or admissions to HSC were pending. The patients' holds

---

1. The parties stipulate that the Hospital is an appropriate regional facility under SDCL 27A-1-1(2).

ranged from a one-day period to a twelve-day period.[2]  None of the patients qualified for an interim hold at HSC prior to a commitment.  All the patients received necessary medical treatment before their commitment hearings commenced.  And all twenty-three patients lacked health insurance and were indigent.

[¶6.]        Prior to this action, in July 2015, the Hospital and the County attempted to settle all unpaid claims.  Originally, the unpaid claims included eighty-four claims for $1,200 or less per claim, totaling $38,268.02, and twenty-three claims with larger amounts per claim, totaling $129,630.69 at the county cost rate.  At the July 2015 county commission meeting, the County agreed to and paid the eighty-four smaller claims.  The Hospital claims the County also agreed to pay the twenty-three larger claims by August 31, 2015, and that the Hospital waived the accrued interest on the eighty-four smaller claims contingent on the County paying these twenty-three remaining claims.  The County disputes this agreement.  The twenty-three larger claims remain unpaid.  The County denies liability for the unpaid claims, alleging the unpaid claims are the responsibility of the Hospital or the patient.

[¶7.]        In May 2018, the parties filed cross-motions for summary judgment.  The circuit court first issued a memorandum decision in February 2019, granting summary judgment in favor of the Hospital and denying the County's motion for summary judgment.

---

2.    After a patient was medically cleared, twenty-one of the patients were transferred to HSC and two of the patients were discharged.

[¶8.] The circuit court's first memorandum decision relied on SDCL 27A-10-5 and *Doe ex rel. Tarlow v. District of Columbia*, 920 F. Supp. 2d 112 (D.D.C. 2013) and determined that the County was responsible for the Hospital's billings. It based its decision on the belief that the patients were in the State's custody during the involuntary hold process and the State was required on substantive due process grounds to provide for their basic needs, such as health care. While acknowledging that SDCL chapter 27A-10 does not contain a provision specifically requiring the County to pay for medical expenses pre-commitment, the circuit court determined that the County's requirement to pay the cost of detainment under SDCL 27A-10-7 must necessarily be read to include the cost for bringing the patient to medical stability. Viewed as a substantive due process right, the court found that applying the process required under SDCL chapter 28-13, for hospitals to obtain reimbursement from a county for costs incurred for the care of indigent persons, would incorrectly shift the cost of care from the county to the patient.[3] The court made additional holdings, which are not addressed by this Court.

[¶9.] The County filed a motion to reconsider the memorandum decision. The circuit court granted the motion. At the second hearing in September 2019, the circuit court entered a second memorandum decision in favor of the County.

[¶10.] The court in its second memorandum decision relied on *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S. Ct. 2979, 77 L. Ed. 2d 605

---

3. SDCL chapter 28-13 sets forth a county's duty to care for its poor and indigent residents. If the Hospital is unable to obtain reimbursement from the County for the medical bills incurred by indigent patients awaiting commitments at HSC, these patients are then left with the debt associated with these unpaid bills.

(1983). The court recognized that SDCL chapter 28-13 provides a procedure for medical providers to receive reimbursement from a county for the care it provides to indigent persons. However, because the Hospital did not seek reimbursement under SDCL chapter 28-13 for the costs at issue, the County had no duty to reimburse the Hospital. The court entered an order and final judgment in favor of the County. The Hospital appeals the final judgment and identified multiple issues for our review, which we restate as follows:

1.      Whether the circuit court erred in granting the County's motion for summary judgment.

2.      Whether the Hospital has a claim in quantum meruit for reimbursement from the County.

3.      Whether the circuit court erred in granting the County's motion to reconsider.

**Analysis and Decision**

***1.      Whether the circuit court erred in granting the County's motion for summary judgment.***

[¶11.]      "We review a circuit court's entry of summary judgment under the de novo standard of review." *Knecht v. Evridge*, 2020 S.D. 9, ¶ 51, 940 N.W.2d 318, 332-33 (quoting *Zochert v. Protective Life Ins. Co.*, 2018 S.D. 84, ¶ 18, 921 N.W.2d 479, 486). The legal principles guiding our review of summary judgment are well-settled:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of

> material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Zochert*, 2018 S.D. 84, ¶ 19, 921 N.W.2d at 486 (quoting *Brandt v. Cnty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874). Because no material facts are in dispute, our task is to determine whether the circuit court correctly applied the law.

[¶12.]     The Hospital argues SDCL chapter 28-13 applies to poor and indigent persons, not persons with a mental illness placed in an emergency hold. Because SDCL chapter 28-13 does not address mental illness, the Hospital argues this chapter cannot provide a method of payment for costs incurred in conjunction with mental illness holds. Thus, the Hospital contends SDCL chapter 27A-10, which addresses mental illness holds, is the applicable chapter. The County argues that while the hold process is encapsulated in the emergency commitment process outlined in SDCL chapter 27A-10, nothing in chapter 27A-10 precludes the application of the Hospital's procedure for obtaining reimbursement from the County for costs of care provided to indigent patients under the provisions of SDCL chapter 28-13.

[¶13.]     Our analysis examines the provisions of SDCL chapter 27A-10 and SDCL chapter 28-13 to determine which party bears the burden of payment—the patient, with the Hospital having a mechanism for reimbursement from the County under SDCL chapter 28-13; or the County under SDCL chapter 27A-10. Our principles of statutory construction guide our discussion:

> The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from

> the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed.

*Leighton v. Bennett*, 2019 S.D. 19, ¶ 7, 926 N.W.2d 465, 468 (quoting *Discover Bank v. Stanley*, 2008 S.D. 111, ¶ 15, 757 N.W.2d 756, 761). However, when "statutory construction is required, 'statutes must be construed according to their intent, [and] the intent must be determined from the statute as a whole, as well as enactments relating to the same subject.'" *Olson v. Butte Cnty. Comm'n*, 2019 S.D. 13, ¶ 5, 925 N.W.2d 463, 464 (quoting *Dale v. Young*, 2015 S.D. 96, ¶ 6, 873 N.W.2d 72, 74) (alteration in original).

[¶14.] The plain language of SDCL chapter 27A-10 expressly states which costs a county is required to pay. None of these provisions require the County to pay or reimburse medical providers for pre-commitment medical expenses. Instead of relying on the statutory language governing which costs a county must pay, the Hospital's argument focuses on the provisions throughout the chapter stating "no lien" may be placed against the *patient*. It claims the language expresses a clear legislative intent for costs to not pass to the patient until after the patient is committed. Therefore, the Hospital contends the county which places the individual in the hold, is responsible for the costs associated with the hold.

[¶15.] The "no lien" language throughout SDCL chapter 27A-10 may reflect a legislative intent to specifically state which costs a patient or a county bears during the involuntary hold process. However, SDCL chapter 27A-10's "no lien" provisions

are each attached to a specific cost, none of which include pre-commitment medical expenses. SDCL 27A-10-6 states, "[n]o lien may be placed against the person for the *costs incurred in the qualified mental health professional examination*." (Emphasis added). SDCL 27A-10-8 states, "[n]o lien may be placed against the person for the *expenses incurred by the board holding the hearing*, including the transportation of the person to the hearing." (Emphasis added). SDCL 27A-10-14 states, "[n]o lien may be placed against the person for the *expense incurred in the transportation of this person*" upon release from commitment.[4] (Emphasis added). SDCL 27A-10-7, which the Hospital relies heavily on, outlines the procedures the parties must take based on the results of the QMHP's examination. The statute's relevant parts provide, if the examination reveals the patient must be released, the costs of transportation "are subject to reimbursement by the county ultimately proven to be the county of residence. *No lien may be placed against the person for*

---

4. The Hospital also looks to the "no lien" language in SDCL chapter 27A-11A and provisions for payment by counties under 27A-13. Neither chapter is applicable to the current issue. Rather, these provisions show the Legislature's designation of the specific costs a county must pay. SDCL 27A-11A-9 provides, "no lien may be placed against the person" for the QMHP evaluation costs associated with an emergency hold under SDCL 27A-10-16, but the costs of additional examinations are ultimately the patient's responsibility. SDCL 27A-11A-9 directs the county to initially pay the cost of an additional examination but directs that the individual being examined reimburse the county if that person is not indigent. The statute nevertheless allows a lien for these costs to be placed upon the person's property to ensure payment. Further, SDCL 27A-11A-12 provides no lien may be placed against a patient for the costs of counsel appointed for a pre-commitment or a review hearing, but unlike the "no lien" language in SDCL 27A-10-7, this statute specifically directs that the county pay for these costs. SDCL 27A-13-6 and 27A-16 provide that the county of residence pays for the admission fee and care of a voluntarily committed indigent patient at HSC if such person is entitled to poor relief under chapter 28-13.

*the transportation expenses.*" SDCL 27A-10-7 (emphasis added). And, if an examination justifies a patient's hold in a regional facility, "[n]o *lien may be placed against the person for the costs associated with detainment pending the hearing.*" *Id.* (emphasis added).

[¶16.] Further, *expressio unius est exclusio alterius* is a useful statutory maxim to shed light on the Legislature's intent. "[T]he expression of one thing is the exclusion of another." *In re Estate of Flaws*, 2012 S.D. 3, ¶ 19, 811 N.W.2d 749, 753 (quoting *Rush v. U.S. Bancorp Equip. Fin., Inc.*, 2007 S.D. 119, ¶ 10, 742 N.W.2d 266, 269). SDCL 27A-10-7 expressly provides the costs a patient is *not* responsible to pay, and expressly provides that the county is responsible for the transportation costs. If the Legislature intended a county to pay the costs of medical care, while a person is detained under SDCL 27A-10-7, it could have expressly stated so, as it did with other costs.[5]

[¶17.] The Hospital argues to the contrary. It claims SDCL 27A-10-7's language stating no lien may be placed against a patient for the "costs associated with detainment" inherently includes medical care. Its argument is based on the DSS's Guidelines requiring a patient to be medically cleared before his or her admission to HSC. Therefore, the Hospital contends the medical costs incurred until a patient is medically cleared must be part of the "costs associated with detainment." *See* SDCL 27A-10-7. The County responds that the twenty-three

---

5. Our duty is to interpret the statutes before us. The Legislature holds the power to provide clarity to the emergency medical hold process by expressly stating whether a patient or a county is responsible for the costs of medical care during the hold period.

patients here each required additional medical care unrelated to the condition upon which his or her involuntary hold was based. Therefore, the County maintains that such medical care is not a "cost associated with detainment" because it was not part of the commitment process. Rather, this medical care was a matter between the patients and the Hospital.[6]

[¶18.] DSS's Guidelines are not helpful here. First, DSS did not draft the Guidelines until after treatment was rendered to the twenty-three individuals at issue. Second, the Guidelines do not address the party responsible for the patient's medical care. Finally, even if they did suggest the County was responsible, such a directive could only be accomplished through a legislative act or duly authorized and implemented administrative rule. Therefore, the Guidelines have no binding legal effect on a county under SDCL 1-1-23[7] or pursuant to the rules governing administrative procedures under SDCL chapter 1-26.

---

6. The County aptly notes that if any of these patients had private insurance coverage, the costs at issue would have been paid by their insurers, while the County is only responsible for reimbursement of such medical care to indigents through the process outlined in chapter 28-13.

7. SDCL 1-1-23 provides:
   The will of the sovereign power is expressed:
   (1) By the Constitution of the United States;
   (2) By treaties made under the authority of the United States;
   (3) By statutes enacted by the Congress of the United States;
   (4) By the Constitution of this state;
   (5) By statutes enacted by the Legislature;
   (6) By statutes enacted by vote of the voters;
   (7) By the ordinances of authorized subordinate bodies;
   (8) Rules of practice and procedure prescribed by courts or adopted by departments, commissions, boards, officers of the state, or its subdivisions pursuant to authority so to do.

[¶19.]     In reconsidering its initial ruling, the circuit court looked to *City of Revere* in holding SDCL chapter 27-10 did not apply. The Supreme Court in *City of Revere* examined whether a hospital or a city was responsible for the medical care of an individual shot by the City's police. 463 U.S. at 241-42, 103 S. Ct. at 2981-82. The Supreme Court held the City's constitutional duty under the Due Process Clause of the Fourteenth Amendment was to "ensure[] that the medical care needed is in fact provided," but "the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. *That is a matter of state law.*" *Id.* at 245, 103 S. Ct. at 2983 (emphasis added).

[¶20.]     Our own case law also makes clear—a county's financial obligation to a medical provider for indigent medical care must exist by express statutory mandate. The County's liability for indigent medical care "must be found in the applicable statutes or not at all." *Sioux Valley Hospital Ass'n v. Davison Cnty.*, 298 N.W.2d 85, 87 (S.D. 1980). Here, the County's duty to pay is found in SDCL chapter 28-13. "Hospitals admitting indigents may be reimbursed for expenses by the indigent's county of residence, if the hospital complies with the procedural requirements set forth in SDCL ch. 28-13." *Appeal of Presentation Sisters, Inc.*, 471 N.W.2d 169, 174 (S.D. 1991). SDCL 28-13-1.3 defines a medically indigent person as one who has no ability to pay for hospitalization, has no public or private third-party coverage or insurance, has not voluntarily reduced assets to avoid payment, and is not indigent by design. Each of the twenty-three patients, with disputed claims, are medically indigent falling under SDCL chapter 28-13.

[¶21.] The Hospital had the ability to request reimbursement from the County, under SDCL chapter 28-13. The chapter's procedure allows a hospital to send notice to the county auditor "within fifteen days" of an indigent patient's emergency admission. SDCL 28-13-34.1. Then, a hospital is required to send an application on behalf of the patient to the county auditor within one-year of the patient's discharge. SDCL 28-13-32.4. A county's burden of payment does not exist *unless* a hospital follows this statutory procedure. Here, the Hospital failed to follow this procedure and cannot obtain reimbursement for the twenty-three patients' medical costs.

[¶22.] While the Hospital counters that SDCL 27A-13-15 and SDCL chapter 27A-10 provide the appropriate statutory procedure for payment, these provisions are in two different inapplicable chapters.[8] The Hospital argues reading SDCL 27A-10-7, 27A-10-19, and 27A-12-3.11 together "wholly abrogates the [circuit] court's holding." SDCL 27A-10-19 describes the procedure for implementing a 24-hour emergency hold; and SDCL 27A-12-3.11 allows for the performance of emergency medical procedures under certain conditions. These provisions do not state that the County is responsible for medical care costs. Neither provision nor the language in SDCL 27A-10-7, discussed above, persuade us that the circuit court was incorrect in applying SDCL chapter 28-13.

---

8. SDCL 27A-13-15 provides, "[t]he board of county commissioners shall annually appropriate a sum sufficient to pay for the support of its mentally ill." SDCL chapter 27A-7 addresses a county board of mental illness's structure, jurisdiction, and liability.

[¶23.] In summary, SDCL chapter 28-13 provides a procedure for reimbursement of indigent patients' medical costs, while SDCL chapter 27A-10 does not. The circuit court appropriately applied SDCL chapter 28-13 to the disputed claims. We affirm the circuit court's granting of summary judgment in favor of the County. It is therefore unnecessary to address the Hospital's argument discussing the proper billing rate for the disputed medical care, as the County is not responsible for payment.

### 2. Whether the Hospital has a claim in quantum meruit for reimbursement from the County.

[¶24.] The Hospital argues it is entitled to equitable relief as it furnished services that the County is required to provide—medical care for indigent persons with mental illness. The circuit court did not reach this issue. As discussed above, the Hospital had the opportunity to apply for reimbursement from the County under SDCL chapter 28-13. The doctrine of quantum meruit "awards restitution for the value of the services provided under that implied contract." *Johnson v. Larson*, 2010 S.D. 20, ¶ 14, 779 N.W.2d 412, 417. Because the services here were provided to the indigent patients and the County has no obligation to pay for the disputed medical care costs outside the provisions of SDCL 28-13, the Hospital's quantum meruit claim fails.

### 3. Whether the circuit court erred in granting the County's motion to reconsider.

[¶25.] The Hospital argues the circuit court failed to promptly enter judgment under SDCL 15-6-58; and the County did not allege a ground under SDCL

15-6-60(b) for reconsideration of the judgment. The circuit court entered one judgment in the proceeding, after its second memorandum decision.

> A memorandum decision is not a binding decision ending the case. As its name implies, a memorandum opinion is merely an expression of the trial court's opinion of facts and law. Therefore, "[i]t is the prerogative of the [circuit] court to re-think a decision from the bench or a memorandum decision."

*Ellingson v. Ammann*, 2013 S.D. 32, ¶ 8, 830 N.W.2d 99, 102 (citations omitted) (alterations in original). The circuit court did not reconsider a judgment, but rather a memorandum decision. After making its final decision, the circuit court promptly entered its judgment, therefore, the Hospital's procedural claims also fail.

## Conclusion

[¶26.]     The circuit court did not err in holding SDCL chapter 28-13 is the proper mechanism for the Hospital to obtain reimbursement from the County for medical costs associated with the twenty-three patients in the involuntary commitment process. We affirm.

[¶27.]     KERN, JENSEN, and DEVANEY, Justices, and MYREN, Circuit Court Judge, concur.

[¶28.]     MYREN, Circuit Court Judge, sitting for SALTER, Justice, disqualified.