#30211-aff in pt & rev in pt-MES
**2025 S.D. 11**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CIV 19-193

MARY L. LANGBEHN, as sole income
Beneficiary and co-trustee of the
Richard K. Langbehn Revocable Living
Trust Agreement,                                    Plaintiff and Appellee,

    v.

MICHAEL LANGBEHN, and
LANGBEHN LAND & CATTLE CO., INC.,        Defendants and Appellants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CIV 19-192

MARY L. LANGBEHN, as sole income
Beneficiary and co-trustee of the
Mary L. Langbehn Revocable Living
Trust Agreement,                                    Plaintiff and Appellee,

    v.

MICHAEL LANGBEHN, and
LANGBEHN LAND & CATTLE CO., INC.,        Defendants and Appellants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CIV 19-216

MARY L. LANGBEHN,                                   Plaintiff and Appellee,

    v.

LANGBEHN LAND & CATTLE CO., INC.,        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

ARGUED
AUGUST 31, 2023
OPINION FILED **02/26/25**

* * * *

THE HONORABLE PATRICK T. PARDY
Judge

* * * *

STACY R. HEGGE
QUENTIN L. RIGGINS of
Gunderson, Palmer, Nelson
   & Ashmore, LLP
Pierre, South Dakota

Attorneys for defendants and appellants.


MICHAEL F. STEVE
JESS M. PEKARSKI of
Costello, Porter, Hill, Heisterkamp,
   Bushnell & Carpenter, LLP
Rapid City, South Dakota

Attorneys for plaintiff and appellee.

#30211

SALTER, Justice

[¶1.]　　　　Mary Langbehn sued her son, Michael Langbehn, and his company, Langbehn Land and Cattle Co. (LL&C), alleging Michael breached his fiduciary duty as a co-trustee of his deceased father's trust. Michael filed counterclaims for unjust enrichment and quantum meruit relating to improvements he claimed to have made to real estate he leased from his father's trust and Mary's separate living trust. The circuit court granted summary judgment in favor of Mary on her claims as well as on Michael's counterclaims. The court also removed Michael as a co-trustee and awarded Mary $513,796.94 in damages. Michael appeals. We reverse in part, affirm in part, and remand for further proceedings.

## Factual and Procedural History

[¶2.]　　　　Richard and Mary Langbehn were a married couple who owned and farmed a substantial amount of crop and pastureland in Beadle County. In 2007, Richard and Mary each executed reciprocal trust agreements. These trust agreements created individual revocable living trusts—the Mary Langbehn Revocable Living Trust and the Richard Langbehn Revocable Living Trust. Each living trust named both spouses as co-trustees, named the other spouse's trust as a beneficiary, and was funded with a fifty percent interest in the couple's real property. The couple's trust agreements also provided for the creation of a credit exemption trust upon the death of the grantor in the event the other spouse was

-1-

still living, with the surviving spouse designated as the income beneficiary and Richard's and Mary's son, Michael, as the remainder beneficiary.[1]

[¶3.]    Richard passed away in March 2008.  Pursuant to his living trust, his death prompted the creation of the Richard K. Langbehn Credit Exemption Trust (the credit trust) into which was transferred his undivided one-half interest in the couple's real estate.  As a result, all of the Langbehns' agricultural land is either owned jointly by the credit trust and Mary's living trust or exclusively by Mary's living trust; the credit trust does not solely own any of the land.

[¶4.]    Pursuant to Richard's trust agreement, Mary, Michael, and a corporate trustee became co-trustees of the credit trust.[2]  Among its other provisions, the credit trust recited Richard's intent "that the amount of rent that the Trust charges my son, Michael, for the rent of the farm real estate is not as important to me as the right of my son, Michael, to have the use of such land.  Therefore, I direct that the land may be rented for less than fair rental value."

[¶5.]    Prior to Richard's passing, Richard, Mary, and Michael together had formed LL&C as part of their farming operation.  Upon Richard's passing, Richard's

---

1.    A credit exemption trust, also known as a credit shelter trust or a credit trust, is designed to maximize a married couple's unified credit against federal estate and transfer tax.  *See* Jay A. Soled, A Proposal to Make Credit Shelter Trusts Obsolete, 51 Tax Law. 83, 88 (1997).  For example, the credit exemption trust portion of Richard's trust agreement states that it will be funded at his death, should Mary survive him, with "such amount of [his] adjusted gross estate as shall increase [his] taxable estate for federal estate tax purposes to the largest amount which will . . . result in no federal estate tax being payable by [his] estate[.]"

2.    Richard's death also meant that Mary became the sole trustee of Mary's living trust.

interest in LL&C was transferred to Michael under the terms of Richard's living trust. Mary subsequently gifted her interest in LL&C to Michael, making him the sole owner. Additionally, Mary had earlier executed a general power of attorney that made Richard her attorney-in-fact and, upon Richard's death, appointed Michael to serve as Richard's successor.

[¶6.]      In 2009, Mary entered into a ten-year lease agreement to lease 1,299 acres of cropland and 1,579 acres of grassland to Michael, through LL&C. While the lease does not indicate in what capacity Mary signed, it appears she was acting in her capacity as a trustee of the credit trust and her own living trust. The land included in the lease was owned jointly by the credit trust and by Mary's living trust, as tenants in common, along with land that was owned by Mary's living trust. The parties agree that the land was leased to LL&C at a rate below the fair market value—the cropland was leased at a rate of $50.00 per acre and the grassland was leased at a rate of $19.00 per acre.

[¶7.]      The justification for the lower rent was sourced to the provision in the credit trust that authorized below-market rental rates for Michael, which Mary apparently extended to Michael's corporation, LL&C. And because the credit trust did not own any real estate of its own, it appears Mary also agreed on behalf of her living trust to lease the land at the lower rent, both for land owned jointly with the credit trust land as well as the land held separately by her living trust.[3]

---

3.      In some of her submissions to the circuit court, Mary suggests that the provision authorizing below market rent for Michael also applied to her by virtue of the reciprocal credit trust provision contained in her living trust instrument. The circuit court noted this argument as well, and though it

(continued . . .)

[¶8.] Michael, through LL&C, farmed the land for several years until 2018 when he reportedly experienced medical issues and was temporarily unable to continue farming. The ten-year lease with Mary did not contain a prohibition upon subleasing, and, faced with these circumstances, Michael entered into a three-year sublease beginning on April 9, 2018, with a third party, Jack Steele. Steele rented 1,152.05 acres, 983.03 of which were owned jointly by the credit trust and Mary's living trust and 89.02 of which were owned solely by Mary's living trust. This land was subleased at a rate of $63.60 per acre. Michael signed the lease on behalf of LL&C and as a trustee of the credit trust.

[¶9.] In May 2018, Michael, on behalf of LL&C, entered into another sublease with Dubois Farms. The Dubois lease was for 1,990 acres, of which 953 acres were owned by both the credit trust and Mary's living trust and 360 acres were owned solely by Mary's living trust. This land was subleased at a rate of $150 per acre.

[¶10.] When Mary discovered that Michael had subleased the property, she sent letters to Steele and Dubois Farms in September 2019, claiming they had entered into improper subleases with LL&C. Mary subsequently commenced two civil actions against Michael and LL&C in October 2019. In one suit, Mary acted in her capacity as co-trustee and sole income beneficiary of the credit trust, and in the

---

(. . . continued)
>
> does not impact our analysis, we agree with its conclusion that, under the terms of Mary's living trust instrument, her separate credit trust would only have been created if she had predeceased Richard, which, of course, is not the case.

other, she acted in her capacity as the sole trustee and sole income beneficiary of Mary's living trust.

[¶11.] In both suits, Mary alleged that Michael had improperly subleased the land to Steele and Dubois Farms.[4] Although the complaints did not designate specific causes of action as such, the gravamen of both actions was focused on an alleged breach of fiduciary duty under the theory that Michael had failed to disclose information about the subleases and the income he derived from them:

> Michael willfully and fraudulently misrepresented or concealed the fact that he or his company, [LL&C], had subleased the property and was co-mingling . . . [both trusts'] assets with his assets and obligations with the intent to induce Mary to allow him to continue leasing . . . [both trusts'] property at below market rent.

[¶12.] In his answers filed in both cases, Michael alleged that he was authorized to lease the land at below market rates and, further, that he had discussed the subleases with Mary, an assertion she has flatly denied. Michael also included counterclaims for unjust enrichment and quantum meruit, both relating to costs he claimed to have incurred repairing and improving a house and farmstead located on the leased land that had previously been occupied by his parents.[5]

---

4. Mary commenced a third action in November 2019 against LL&C, alleging it had defaulted on a promissory note for money she loaned to LL&C in 2014. The circuit court granted summary judgment on this claim, and Michael has not appealed that determination.

5. Michael's counterclaim also included a claim for violation of terms of Richard's trust agreement. He asserted that the terms of the trust agreement *required* the credit trust to lease the property to him. In a March 2020 memorandum decision, the circuit court rejected this claim, and Michael has not appealed that determination.

[¶13.]      The circuit court consolidated the actions, and Mary filed a motion seeking to remove Michael as a co-trustee of the credit trust under the theory he breached his fiduciary duty. She also moved for summary judgment on Michael's counterclaims.

[¶14.]      The circuit court granted Mary's motion to remove Michael as a co-trustee in September 2022.[6] Though the parties, at various points, submitted affidavits, the court did not take evidence but made the following determination:

> [Michael] had to keep [Mary] reasonably informed, act in the highest good faith toward [Mary] by not obtaining an advantage over her, and avoid self-dealing. In looking at the facts, [Michael] failed in all respects.

[¶15.]      The circuit court concluded that Michael had engaged in self-dealing and breached his fiduciary duty of loyalty to the credit trust by profiting from the subleases. It was undisputed that Michael, through LL&C, retained the money represented by the difference between the below market rent he paid and the much higher price he charged the sublease tenants. Michael asserts he used a portion of the funds to cover expenses associated with farming the land, "including crop insurance and other expenses." Though Michael testified during his deposition that he advised Mary of the subleases, the court stated that "[b]esides his word, the Court is without evidence that [Michael] informed [Mary] of the subleases."

[¶16.]      In October 2022, the circuit court issued another memorandum opinion, this time granting Mary's motion for summary judgment regarding her

---

6.      The circuit court also gave Mary the authority to appoint a new co-trustee, expunged the notice of lis pendens that Michael had filed, and granted a petition for replacement of the institutional co-trustee.

broader breach of fiduciary duty claim based upon the same justification for removing Michael as co-trustee of the credit trust a month earlier—the determination that Michael had failed to keep Mary reasonably informed, act in the highest good faith towards Mary, and uphold his duty of loyalty.

[¶17.]     The circuit court also granted Mary's summary judgment motion as to Michael's counterclaims for unjust enrichment and quantum meruit. As it related to the unjust enrichment claim, the court relied upon landlord-tenant principles that generally allow a landlord to retain improvements made by a tenant. The court further concluded that "[Michael and LL&C] have not provided facts supporting their allegations regarding the inequity of [Mary] retaining the benefits or the presence of an agreement for reimbursement of the improvements."[7]

[¶18.]     With regard to the claim for quantum meruit, the circuit court reasoned, "As [Michael and LL&C] did not present sufficient probative evidence of an agreement for reimbursement of improvements, there similarly lacks specific facts that [Mary] requested and agreed to pay for these services." The court determined that Mary "was merely aware of but never requested services."

[¶19.]     The circuit court entered final judgment on December 5, 2022, and awarded Mary $513,796.94 in damages for Michael's breach of fiduciary duty—the amount equal to the excess income from the subleases plus interest. Both parties

---

7.     While there was a dispute as to whether an understanding between the parties existed, the court found no "specific facts" that an agreement existed and explained that "[a]wareness falls short of an agreement, and any evidence of an agreement is merely speculation, conjecture, or fantasy."

agreed at the summary judgment hearing that Michael retained $340,573.07 from the subleases.

[¶20.]    Michael appeals, raising the following issues:

1.    Whether the circuit court erred when it granted summary judgment on Mary's breach of fiduciary duty claims.

2.    Whether the circuit court abused its discretion when it removed Michael as a co-trustee of the Richard Langbehn credit trust.

3.    Whether the circuit court erred when it granted summary judgment against Michael on his counterclaims of unjust enrichment and quantum meruit.

**Analysis and Decision**

*Appellate Jurisdiction*

[¶21.]    The summary judgment orders at issue are based upon separate memorandum decisions, each of which references "the factual background" included as part of the circuit court's March 2020 memorandum decision. This March 2020 decision, which is not at issue here, addressed Mary's petition for court supervision of the credit trust and her motion for an order approving her request to lease the farmland at issue directly to Steele and Dubois Farms.[8] The court granted relief in both respects, and the conforming April 2020 order included a bare assertion of finality pursuant to SDCL 15-6-54(b) (Rule 54(b))–"ORDERED, ADJUDGED, and DECREED that this Court, having determined that there is no just reason for delay

---

8.    While the 2009 lease to LL&C had expired by its terms, Michael argued that he could continue to rent the property at the below market rate in order to finish the three-year subleases with Steele and Dubois Farms.

and hereby directs that this Order shall be considered final pursuant to SDCL § 15-6-54(b)." However, the order was not appealed.

[¶22.] Based upon this purported Rule 54(b) certification, Mary presents a wending jurisdictional argument. She contends that any determinations made by the circuit court in the March 2020 memorandum decision, and later incorporated into the court's September 2022 and October 2022 memorandum decisions, cannot be challenged in the current appeal because Michael did not use the Rule 54(b) certification to appeal the April 2020 order which, in turn, incorporated the March 2020 memorandum decision and the court's conclusions that Michael was acting as a fiduciary when he entered into the subleases.

[¶23.] We conclude that Mary's jurisdictional argument is not sustainable because its premise—that the April 2020 order was an effective Rule 54(b) final order—is not sound. In a series of recent decisions, we have reaffirmed the rule that a circuit court order that states only a conclusory reference to Rule 54(b) is not sufficient to convert an otherwise interlocutory order into a final one. We have held, in this regard, that "these types of conclusory statements do not, themselves, satisfy the circuit court's obligation to 'marshal[ ] and articulate the factors upon which it relied in granting certification so that prompt and effective review can be facilitated.'" *Nelson v. Estate of Campbell*, 2021 S.D. 47, ¶ 31, 963 N.W.2d 560, 569–70 (alteration in original) (quoting *Weisser v. Jackson Twp. Of Charles Mix Cnty.*, 2009 S.D. 43, ¶ 4, 767 N.W.2d 888, 890). "Rule 54(b) certifications must include a reasoned statement in support of its determination that there is no just reason for delay. . . . Mere recitation of the statutory language is insufficient." *Huls v. Meyer*,

2020 S.D. 24, ¶ 17, 943 N.W.2d 340, 344 (omission in original) (cleaned up). Further, Rule 54(b) appeals "will be considered appropriate in only the rare case[.]" *Weisser*, 2009 S.D. 43, ¶ 4, 767 N.W.2d at 889 (citation omitted).

[¶24.]     Under these principles, the circuit court's April 2020 order merely stating "there is no just reason for delay" did not constitute a reasoned statement satisfying the Rule 54(b) standard necessary to certify an order as final and appealable. Therefore, we would not have had appellate jurisdiction to consider the April 2020 order even if there had been an appeal.

[¶25.]     In this current appeal, however, we do have appellate jurisdiction to consider all of the issues presented. These issues follow final orders that leave no unresolved claims between the parties, and our rules allow appellate review of "any order, ruling, or determination of the trial court . . . necessarily affecting the judgment and appearing upon the record." SDCL 15-26A-7.

### Summary judgment on Mary's claim of breach of fiduciary duties

[¶26.]     "We review a circuit court's entry of summary judgment under the de novo standard of review." *Ries v. JM Custom Homes, LLC*, 2022 S.D. 52, ¶ 14, 980 N.W.2d 217, 222 (citation omitted). "We will affirm a circuit court's 'grant of a motion for summary judgment when no genuine issues of material fact exist, and the legal questions have been correctly decided.'" *Id.* (citation omitted).

[¶27.]     "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Geidel v. De Smet Farm Mut.*

*Ins. Co. of S.D.*, 2019 S.D. 20, ¶ 7, 926 N.W.2d 478, 481 (quoting *North Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 12, 873 N.W.2d 57, 61). "On review, '[t]he evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party.'" *Plains Com. Bank, Inc. v. Beck*, 2023 S.D. 8, ¶ 23, 986 N.W.2d 519, 527 (alteration in original) (quoting *Kirlin v. Halverson*, 2008 S.D. 107, ¶ 10, 758 N.W.2d 436, 443).

[¶28.]      However, the nonmoving party "must present specific facts showing that a genuine, material issue for trial exists." *Sacred Heart Health Servs., Inc. v. Yankton Cnty.*, 2020 S.D. 64, ¶ 11, 951 N.W.2d 544, 548 (citation omitted). "We have repeatedly held that the nonmoving party to a summary judgment motion may not sit idly by where the moving party has established a prima facie case for granting the motion." *Kimball Inv. Land, Ltd. v. Chmela*, 2000 S.D. 6, ¶ 17 n.3, 604 N.W.2d 289, 294 n.3 (citation omitted). "A sufficient showing requires that '[t]he party challenging summary judgment . . . substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.'" *Godbe v. City of Rapid City*, 2022 S.D. 1, ¶ 21, 969 N.W.2d 208, 213 (alteration in original) (quoting *Nationwide Mut. Ins. Co. v. Barton Solvents Inc.*, 2014 S.D. 70, ¶ 10, 855 N.W.2d 145, 149).

[¶29.]      With regard to the circuit court's determination that Michael breached his fiduciary duties to Mary, Michael raises three issues: whether he was acting as a fiduciary; whether he engaged in impermissible self-dealing; and whether he failed to communicate material facts (the subleases) to Mary.

### a.    *Michael as a fiduciary*

[¶30.]    "To recover for breach of fiduciary duty, a plaintiff must prove: (1) that the defendant was acting as plaintiff's fiduciary; (2) that the defendant breached a fiduciary duty to plaintiff; (3) that plaintiff incurred damages; and (4) that the defendant's breach of the fiduciary duty was a cause of plaintiff's damages." *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 38, 652 N.W.2d 756, 772. "Whether a fiduciary relationship exists and the scope of the duty are questions of law[.]" *Estate of Stoebner v. Huether*, 2019 S.D. 58, ¶ 17, 935 N.W.2d 262, 267 (citation omitted).

[¶31.]    "As a fiduciary, a trustee has a duty 'to act in all things wholly for the benefit of the trust.'" *Estate of Moncur*, 2012 S.D. 17, ¶ 9, 812 N.W.2d 485, 487 (quoting *Willers v. Wettestad*, 510 N.W.2d 676, 680 (S.D. 1994)). "In all matters connected with his trust a trustee is bound to act in the highest good faith toward his beneficiary[.]" SDCL 55-2-1.

[¶32.]    Initially, Michael asserts that he was not acting as a trustee of the credit trust when he entered into the subleases on behalf of LL&C. He argues that the circuit court "blurred [the] lines" between Michael's role as a co-trustee of the credit trust and the role of LL&C as the lessor of the farmland. However, he did not raise this argument before the circuit court, and, in fact, he appeared to acknowledge his role as a fiduciary, arguing that he was authorized, "in his capacity as co-trustee" to "sell, convey, pledge, mortgage, lease or transfer title to any interest in real or personal property[.]" Beyond this, Michael is a co-trustee of the credit trust and unquestionably a fiduciary.

[¶33.] Michael also contends on appeal that he was not acting as Mary's fiduciary when he entered into the sublease agreements for the farmland, some of which is owned jointly by the credit trust and Mary's living trust and some of which is owned solely by Mary's living trust. Mary resists this, arguing that Michael effectively waived this claim by admitting one of Mary's asserted undisputed material facts that posited that Michael "signed subleases for land owned by the Credit Exemption Trust, Mary's Trust, and Mary personally on behalf of Mary." This admission is peculiar, however, since neither sublease indicates Michael signed on behalf of Mary or Mary's living trust.

[¶34.] But regardless, the extent of the circuit court's determination of Michael's fiduciary status related exclusively to his role as a co-trustee of the credit trust; the court did not hold that Michael occupied a fiduciary role vis-à-vis Mary outside of his co-trustee role. For these reasons, the question of Michael's fiduciary status is not at issue on appeal.

> b. *Self-dealing*

[¶35.] A trustee generally "does not have authority to self-deal[.]" *Plains Com. Bank*, 2023 S.D. 8, ¶ 30, 986 N.W.2d at 529; *see also* SDCL 55-2-2 ("A trustee may not in any manner use or deal with the trust property for his own profit or for any other purpose unconnected with the trust."). However, the provisions of SDCL 55-2-3(4) provide an exception for the general rule against self-dealing "[w]hen the instrument creating the trust expressly grants permission to the trustee to buy, sell or lease property for the trust from or to the trust." The language permitting the self-dealing must be "clear and unmistakable." *Plains Com. Bank*, 2023 S.D. 8,

¶ 30, 986 N.W.2d at 529. Unauthorized self-dealing constitutes a breach of fiduciary duties. *See, e.g.*, *Estate of Stoebner*, 2019 S.D. 58, ¶ 21, 935 N.W.2d at 268; *Wyman v. Bruckner*, 2018 S.D. 17, ¶ 24, 908 N.W.2d 170, 177.

[¶36.] Whether a trust instrument permits or prohibits certain conduct is a question of law, which requires us to interpret the trust instrument.

> When interpreting a trust instrument, we must ensure that the intentions and wishes of the [settlor] are honored. To do so, we first look to the language of the trust instrument[,] and [i]f the language of the trust instrument makes the intention of the [settlor] clear, it is our duty to declare and enforce it.

*Plains Com. Bank*, 2023 S.D. 8, ¶ 26, 986 N.W.2d at 528 (cleaned up); *In re Sunray Holdings Tr.*, 2013 S.D. 89, ¶ 11, 841 N.W.2d 271, 274 (citing *In re Schwan 1992 Great, Great Grandchildren's Tr.*, 2006 S.D. 9, ¶ 11, 709 N.W.2d 849, 852) ("Trust interpretation is a question of law reviewed de novo."); *see also Guardianship of Novotny*, 2017 S.D. 74, ¶ 14, 904 N.W.2d 346, 350 (citing *In re Sunray Holdings Tr.*, 2013 S.D. 89, ¶ 11, 841 N.W.2d at 274) ("Whether a trust is ambiguous is a question of law reviewed de novo.").

[¶37.] Mary argued to the circuit court, and the circuit court agreed, that by subleasing the land to Steele and DuBois Farms, Michael engaged in self-dealing in breach of his fiduciary duties. We disagree and conclude that this case does not involve impermissible self-dealing.[9] Under the provisions of the credit trust,

---

9. Nor was the case pled as a self-dealing case. Mary's complaints do contain an allegation that Michael lacked authority to profit from subleasing the property, but the principal wrong identified by Mary relates to Michael's alleged failure to communicate with Mary and account for the excess rent income realized through the subleases.

Richard provided a clear and unmistakable expression of his intent to allow Michael to self-deal by leasing the farmland at below market prices:

> It is my intention and direction that my son, Michael, be in charge of any and all farm assets held within the Credit Exemption Trust and be allowed to exercise all Trustee powers outlined within this Trust over the farm assets in his sole discretion. Notwithstanding anything else to the contrary contained within this Agreement, so long as there are three Trustees of the Credit Exemption Trust, it is my intent and I hereby direct that any decision regarding farm assets shall be made by my son Michael and my wife, Mary or either of them, and that such decision need not to be unanimous. It is also my intent and my direction that the amount of rent that the Trust charges my son, Michael, for the rent of the farm real estate is not as important to me as the right of my son, Michael, to have the use of such land. Therefore, I direct that the land may be rented for less than fair rental value.

[¶38.] There is no ambiguity in this language which expressly authorizes Michael to self-deal. And consistent with this trust provision, Mary entered into a ten-year lease with Michael and LL&C, from April 1, 2009, through March 31, 2019, for less than fair market rent. In doing so, Mary was acting as a co-trustee and also as a landowner; her living trust is a tenant-in-common with the credit trust and owns some of the Langbehn land itself. The lease itself did not prohibit subleasing, and so, Michael was similarly authorized to sublease the land as part of what the credit trust describes as his "use of such land."[10]

---

10. The circuit court interpreted the "use" term of the credit trust differently and consistent with Mary's position: "Although the grantor's intent in this case expresses a preference for a lease to Michael, it would seem that the reason for that preference was to allow Michael to farm the Trust's agricultural real property." However, we do not believe the "use" term should be read so narrowly, primarily because the text does not restrict Michael's authority to rent the land solely for the purposes of farming it.

[¶39.] However, Michael's right to continue leasing the land at below market rates was not absolute. And after the expiration of the ten-year lease, Mary could, and did, end Michael's effort to continue leasing the land. This was essentially what the circuit court concluded in its un-appealed March 2020 decision that assumed supervision of the credit trust and allowed Mary to enter into leases directly with Steele and Dubois Farms. Michael's sublease of the land was not impermissible self-dealing and not a basis to conclude that Michael breached his fiduciary duties.

### c. Failure to communicate material facts to Mary

[¶40.] "Fiduciary duties, which often produce the duty to disclose, 'are not inherent in normal arm's-length business relationship[s.]'" *Cleveland v. BDL Enterprises, Inc.*, 2003 S.D. 54, ¶ 18, 663 N.W.2d 212, 218; s*ee also* Restatement (Second) of Trusts § 170 (1959) (stating a fiduciary is under a duty to a beneficiary "to deal fairly with [her] and to communicate to [her] all material facts"); Unif. Tr. Code § 813 (Unif. L. Comm'n 2000) (explaining a fiduciary "shall keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust" so she is able to protect her interests).

[¶41.] As indicated, the issue of whether Michael advised Mary of subleases, including information about the additional rent income they were generating, is the principal theory of fiduciary duty breach raised by the pleadings and the submissions to the circuit court and part of the basis on which the court based its determination that Michael breached his fiduciary duties. But on this point, the parties espouse very different factual positions. Mary contends Michael never

disclosed the subleases or information about corresponding additional income and, further, failed to keep her informed of the financial and farm operations. According to Michael, however, this is not accurate. He contends he did share information with Mary about the subleases and the income.

[¶42.] In its decision granting Mary's motion for summary judgment, the circuit court deviated from our well-settled rules that require it to refrain from fact-finding and, instead, consider all factual disputes in the light most favorable to the non-moving party—here, Michael. *See, e.g.*, *Nelson*, 2023 S.D. 14, ¶ 38, 987 N.W.2d at 688 (concluding the circuit court erred in granting summary judgment and explaining that in summary judgment proceedings, the court must view the facts in the light most favorable to the non-moving party).

[¶43.] The court's disposition of the summary judgment motion in October 2022 was based upon its September 2022 decision removing Michael as the co-trustee of the credit trust following the court's determination that Michael breached his fiduciary duty by not disclosing the subleases to Mary. Critically, though, the court's September written decision concerning Michael's conduct reflects unmistakable factfinding:

> [Mary] was owed the duty to be kept reasonably informed of the administration of the [credit] Trust as its sole net income beneficiary. [Michael] contends in his deposition that he informed [Mary] of the subleases before their execution, but she disagrees. *Besides his word, the Court is without evidence that [Michael] informed [Mary] of the subleases.*
>
> *There is evidence inferring nondisclosure*; when [Mary's] attorney inquired of [Michael's] attorney about the subleases, it is apparent [Michael] did not tell his attorney about their existence. . . . *This Court finds that [Mary] was not able to consent to or deny the sublease agreements because she had no*

> *knowledge of their existence until after they were in effect.*
> [Michael] failed to inform [Mary], both before signing the
> subleases and after, about [credit] Trust income that she would
> have been entitled to.

(Emphasis added.)

[¶44.] Whether and under what circumstances Michael advised Mary of the subleases involves material facts that are disputed. They must be tested through the adversarial forum of a trial and resolved by a fact finder. *See Estate of Stoebner*, 2019 S.D. 58, ¶ 17, 935 N.W.2d at 267 (citation omitted) (whether there has been a breach of a fiduciary duty is a question of fact). The circuit court, therefore, erred in concluding, as a matter of law, that Michael failed to properly advise Mary of the subleases and breached his fiduciary duties to Mary in that regard.

### Michael's removal as co-trustee

[¶45.] Michael also challenges his removal as a co-trustee of the credit trust. "We review a circuit court's decision to remove a trustee for abuse of discretion." *In re Tr. Fund of Baumgart*, 2015 S.D. 65, ¶ 27, 868 N.W.2d 568, 575. Under SDCL 55-3-20.1, "the court may remove a trustee if: (1) The trustee commits a serious breach of trust[.]" The Uniform Trust Code defines a serious breach as "a single act that causes significant harm or involves flagrant misconduct. A serious breach of trust may also consist of a series of smaller breaches[.]" *Baumgart*, 2015 S.D. 65, ¶ 35, 868 N.W.2d at 575.

[¶46.] The motion to remove Michael as a co-trustee was not made pursuant to the summary judgment provisions of SDCL 15-6-56(c), and, as indicated above, the court made certain factual findings relative to the issue of whether Michael breached his fiduciary duty. But the court did not take evidence. The record does

include the largely self-serving affidavits of Michael and Mary and their deposition transcripts, but it is unclear if the court used these to resolve factual disputes. *See Estate of Eberle*, 505 N.W.2d 767, 771 (S.D. 1993) (citation omitted) ("Affidavits, although made under oath, are ordinarily not considered competent evidence. Affidavits are unsatisfactory as forms of evidence; they are not subject to cross-examination, combine facts and conclusions and, unintentionally or sometimes even intentionally, omit important facts or give a distorted picture of them.").

[¶47.]    Given these circumstances, and because we have determined that Michael possessed the authority to self-deal and that genuine issues of material fact exist concerning whether he disclosed information about the subleases and farming operation to Mary, we cannot affirm the court's determination that Michael should be removed as the co-trustee of the credit trust on the strength of its determination that he breached his fiduciary duties. Therefore, the circuit court's removal of Michael as a co-trustee was, at a minimum, premature and an abuse of discretion.

[¶48.]    We reverse the entry of summary judgment on Mary's claim of breach of fiduciary duties and the circuit court's decision removing Michael as co-trustee of the credit trust and remand for further proceedings.

### Summary judgment on Michael's counterclaims

#### a.    Unjust Enrichment

[¶49.]    "Unjust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.'" *Dowling Fam. P'ship v. Midland Farms*, 2015 S.D. 50, ¶ 19, 865 N.W.2d 854, 862 (quoting *Hofeldt v. Mehling*, 2003 S.D. 25, ¶ 15, 658

N.W.2d 783, 788). "A party alleging unjust enrichment must show that the other party both received and knew he was receiving a benefit. Additionally, it must be inequitable to allow the enriched party to retain the benefit without paying for it." *Huston v. Martin*, 2018 S.D. 73, ¶ 30, 919 N.W.2d 356, 366.

[¶50.] Michael's counterclaim alleged that Mary was unjustly enriched by improvements he made to the house on the real property he leased, including a remodel of the upstairs with repairs to floors, paint, duct work, and lights. A steel structure with kennels was also built on the property and a waterline was brought to the house from that building.

[¶51.] There is no dispute that Mary received some benefit, and, at least in some cases, she knew she was receiving a benefit. The dispute is centered on the third element of unjust enrichment—whether it would be inequitable to allow Mary to retain the benefit without paying for it. This, in turn, prompts an inquiry into the nature of the transfer or transaction:

> An enrichment is unjust if it "lacks an adequate legal basis;
> [i.e.,] it results from a transaction that the law treats as
> ineffective to work a conclusive alteration in ownership rights.
> Broadly speaking, an ineffective transaction for these purposes
> is one that is *nonconsensual*."

*Dowling Fam. P'ship*, 2015 S.D. 50, ¶ 24, 865 N.W.2d at 864 (alteration in original) (quoting Restatement (Third) of Restitution 7 Unjust Enrichment § 1 cmt. b (2011)).

[¶52.] "Thus, '[a]s a general rule [,] . . . a person who without mistake, coercion[,] or request has unconditionally conferred a benefit upon another is not entitled to restitution[.]'" *Id.* (alterations and omission in original) (quoting *Aetna Life Ins. Co. v. Satterlee*, 475 N.W.2d 569, 574 (S.D. 1991)). Additionally, "in the

absence of an agreement that the landlord will pay for improvements or a statute imposing liability on the landlord, a tenant is not entitled to compensation for improvements made to the leasehold even though they cannot be removed by the lessee." *Huston*, 2018 S.D. 73, ¶ 32, 919 N.W.2d at 366 (quoting *Commercial Tr. & Sav. Bank v. Christensen*, 535 N.W.2d 853, 858 (S.D. 1995)).

[¶53.] Michael does not claim that he was mistaken or coerced, or that Mary requested him to make the improvements to the property. He also does not allege, beyond general, non-specific assertions, that there was any agreement between Mary and him that she would pay for any of the improvements. *See Godbe*, 2022 S.D. 1, ¶ 21, 976 N.W.2d at 213 ("Mere speculation and general assertions, without some concrete evidence, are not enough to avoid summary judgment.") (quoting *Korzan*, 2015 S.D. 97, ¶ 21, 873 N.W.2d at 63). It is undisputed that Mary did not ask for the improvements to be made and never promised or agreed to pay Michael for the improvements he made to the property.[11] Under the circumstances, we conclude that Michael has not developed any disputed material fact relevant to inequity to prevent the entry of summary judgment against him. We affirm the circuit court's grant of summary judgment on Michael's claim of unjust enrichment.

> b. *Quantum Meruit*

[¶54.] "Quantum meruit implies a contract where none exists and awards restitution for the value of the services provided under that implied contract." *Johnson v. Larson*, 2010 S.D. 20, ¶ 14, 779 N.W.2d 412, 417. "To recover under

---

11. At the time he made the improvements, Michael was living on the farmstead. It appears the farmstead is owned by the credit trust, which names Michael as the residual beneficiary.

quantum meruit, the plaintiff must prove, among other things, that the defendant *requested the plaintiff's services* and the plaintiff reasonably expected to be paid." *Id.* (emphasis added).

[¶55.] Essential to Michael's quantum meruit claim is a request for the services provided. However, Michael has made no showing that Mary requested any of the improvements he made to the property or the existence of an agreement confirming as much. For this reason, the circuit court did not err when it granted Mary's motion for summary judgment on Michael's quantum meruit counterclaim.[12]

**Conclusion**

[¶56.] Because Michael did not engage in impermissible self-dealing and genuine issues of material fact remain concerning whether Michael breached his fiduciary duty to the credit trust, we reverse the circuit court's decision to grant summary judgment and its decision to remove him as a co-trustee. However, we affirm the court's decision to grant summary judgment on Michael's counterclaims. The case is remanded for further proceedings.

[¶57.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

12. The parties have also litigated the issue of damages on appeal. Mary points to Michael's statement before the circuit court in which he acknowledged that the amount retained from the sublease arrangement represents the correct amount of contract damages. Because we reverse the circuit court's grant of summary judgment on Mary's breach of fiduciary duty claims, the issue of damages is not ripe for our determination. We, accordingly, express no opinion in this regard and leave the issue and amount of damages for the circuit court or jury to determine when and if it becomes necessary.